**MINTON et al. v. LEAVELL et al. ***
(No. 9046.)

Court of Civil Appeals of Texas. Galveston.
June 3, 1927.

Rehearing Denied June 23, 1927.

1. Religious societies ⬅25—Petition in suit to restrain defendants from excluding plaintiffs from church membership held insufficient to show any invasion of plaintiffs' property rights.

In suit to enjoin defendants from excluding plaintiffs from membership in a church or from attempting to enforce a resolution, adopted by a meeting of church membership, requiring all members in order to retain membership to repledge their allegiance to church's teaching, petition *held* insufficient to show any invasion of property rights of plaintiffs entitling them to relief.

2. Religious societies ⬅14—Civil courts are without power to determine validity of judgment of congregation of church requiring members to repledge allegiance, where civil and property rights are not involved.

The civil courts have no power to determine the validity of the judgment of a congregation of a Baptist Church, sitting as the highest tribunal thereof, at a meeting called for the purpose of requiring members, in order to retain membership, to repledge their allegiance to the church's teaching, where no civil and property rights are involved.

3. Religious societies ⬅7—Church membership creates different relationship on higher plane than that in other voluntary societies.

Membership in a church creates a different relationship and stands upon a higher plane than that which exists in other voluntary societies, formed for business, social, literary, or charitable purposes.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by J. M. Minton and others against J. B. Leavell and others. From an order deny-

ing a temporary injunction and dissolving a restraining order, the plaintiffs appeal. Affirmed.

Andrews, Streetman, Logue & Mobley and Fulbright, Crooker & Freeman, all of Houston, for appellants.

Homer E. Stephenson and Tom C. Rowe, both of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by J. M. Minton and twenty-five others, members of the First Baptist Church of Houston, against appellee J. B. Leavell, individually and, as pastor, moderator, and chairman of the board of deacons of such church, and against the church in its corporate capacity and as a voluntary association and religious society, to enjoin the defendants from interfering in any way with plaintiffs' rights as members of the church, and to restrain defendants from taking any action to exclude plaintiffs from membership in the church, or from attempting to enforce or put in effect a resolution adopted by a meeting of the church membership requiring all members of the church to sign an instrument, designated as the "Church Covenant," on or before January 1, 1927, in order to retain their rights of membership in the church.

The district judge to whom the petition was first presented on January 1, 1927, granted a temporary restraining order in accordance with plaintiffs' prayer, and then set the case for hearing on application for temporary injunction for January 10th. On this hearing a temporary injunction was refused on the ground of lack of jurisdiction in the court over the subject-matter of the suit, and the restraining order dissolved. Notice of appeal having been given by plaintiffs, the court, on their motion, renewed the restraining order pending the appeal.

It is unnecessary for the purpose of this opinion to set out at length the allegations of plaintiffs' petition, and we shall only copy those portions showing the character of the rights asserted by plaintiffs, and the acts of the defendants of which complaint is made. The petition alleges:

"That the defendant religious society, known as the First Baptist Church of Houston, Tex., is a congregation of believers in Christ, baptised on a credible confession of faith and voluntarily associated together under special covenant for the maintenance of the worship, the truths, the ordinances, and the discipline of the Gospel, membership wherein involves no other personal obligation except to promote the objects of said church as expressed in the Covenant, which objects are three, namely:

"(1) The social, united worship of God.

"(2) The perpetuation and diffusion of the Gospel.

"(3) The sanctification of its own members.

"Said Covenant includes only the clearly defined principles which constitute the articles of faith and practice and professed belief necessary to membership in said church, and upon joining said church it was necessary that and, in fact, each and every member of said church did subscribe to, approve of, and accept said Covenant according to the usages and customs of said church; that said church has no right to command, as a duty, a particular mode of showing attachment to Christ, unless He has Himself commanded it, nor has said church the right to resolve itself into a society for the accomplishment or furtherance of temperance, peace, or other such virtues, nor has it any sort or kind of inquisitorial powers or provinces, nor can it pledge any member to anything but what he has pledged himself to upon affiliating with said church—such members having united themselves to the particular church by promising to obey it in all that Christ has commanded, and in nothing more—the organization, usages, customs, tenets, and beliefs of said church being fundamentally grounded upon the foundation that with respect to everything else its membership is perfectly unpledged and uncommitted; that a member of such church under the rules and customs of the church and under the Covenants thereof can be expelled therefrom only when charged with wrongdoing, and even when so charged with wrongdoing he is presumed to be innocent until by due investigation and regular hearing and trial he has been proved guilty, and under such circumstances he is entitled to a full and fair trial with every reasonable opportunity for defense, the only exception to which is in cases of flagrant crime or immorality in which the offense is public and unmistakable, when an immediate expulsion may follow without formal trial.

"Plaintiffs would further show that there is a well-defined manner and method of excluding or expelling a member that must precede such exclusion or expulsion; namely, the officers of the church, becoming aware of reports implicating a member, will proceed privately to investigate that, and if found to be true will endeavor to reclaim such member; after the failure of the first attempt, another should be taken tenderly and privately with every additional appliance which fidelity and kindness can suggest; in event of any continued failure, the officers should bring the case before the church with all the evidence, and if the statement of the case against the accused is controverted by the accused, or by anybody in his behalf, then the accused should have every opportunity for defense; in the event of such charges being made, the members of the church should be assembled as a court wherein the rules of evidence which obtain in courts of law should be followed, and, in event of proved guilt of unmistaken gross immorality, exclusion from membership is the final act of power applied by the church under such circumstances, the members of the church that have attained the age of discretion determining by a majority vote whether or not one of the aforesaid grounds for expulsion has been proved; that a person having once become a member of said church can have his membership terminated only in one of three manners, namely:

"(1) By death of the member.

"(2) By having issued, on his application, a certificate of his church standing, or a letter of dismission for the purpose of uniting with another church (which, however, does not dissolve in any respect the relation of the member to the particular church until he is actually received into another church).

"(3) By exclusion of expulsion upon the grounds and in the manner hereinabove set forth."

It is further alleged that the First Baptist Church of Houston has been organized for a number of years and has approximately 5,000 members, and prior to .occurrences subsequently mentioned and complained of in the petition, the members of the church had dwelt together "in brotherly love and spiritual communion" and had made financial contributions to the church to the reasonable extent of their individual méans, and as a result of such contributions valuable property had been acquired by the church for church purposes, the probable value of such property being $600,000. Then follows lengthy allegations criticizing and complaining of defendants' management of the property and financial affairs of the church, but as no insistence is made in appellants' brief upon any invasion of the property rights of plaintiffs which would entitle them to an injunction, these allegations need not be set out.

It is next alleged, in substance: That the defendant J. B. Leavell, the pastor of the church, was intolerant from any dissent from any of his views upon church matters, and that for a few months immediately prior to November, 1926, plaintiffs and other members of the congregation became somewhat insistent in expressing their views disapproving the pastor's conduct of church affairs, and this caused the defendant Leavell to conceive and attempt to put into execution a plan or scheme to exclude plaintiffs and all other members of the congregation not in accord with the pastor's views and method of conducting the affairs of the church, from further membership therein. That in pursuance of this scheme the defendant pastor selected and appointed a committee of five members and prevailed upon them to suggest and recommend to the church congregation the passage of a resolution proposed by the pastor, requiring each member of the church to sign an instrument designated the "Church Covenant," whereby the member repledged and reconsecrated himself to the service of Christ and to the Baptist faith, the resolution providing that only those signing the covenant on or before January 1, 1927, should thereafter constitute the membership of the church. That this resolution was first presented to and adopted by the congregation at a meeting attended by not more than 200 members. That by reason of the drastic provision of this resolution, which would automatically exclude a large number of the members of the church from further fellowship therein, without personal objection to such members, or notice of any accusation against them, or trial ·by the congregation, and which was voted on by only 4 per cent. of the membership, plaintiffs and a large number of other members of the congregation insisted:

"That said matter be again considered and upon a subsequent occasion had a regular business meeting of said church and motion was made to rescind, make void, and remove from the records that part of the resolution theretofore adopted by the church which provided that 'only those signing the Church Covenant on or before January 1, 1927, constitute the membership of the church,' the contention being urged at said meeting that these plaintiffs and other members being acquainted with the matter entertained no objection whatever to resigning the Church Covenant and entertained no objection to repledging themselves to it and reconsecrating their lives to the Baptist faith and to Christian principles, but that they did contend and object to the quoted portion of said resolution which compelled them to sign a resolution and to be a part or party to automatically effecting a wholesale exclusion of a large majority of the membership of said congregation who might not have an opportunity presented to them to actually sign said Covenant, or who for some reason might neglect or fail to sign it, or who, like these plaintiffs and others to whom the matter was presented, felt that although they had no personal objection to resigning the Church Covenant and repledging themselves to all of the fundamental principles of the Baptist Church and rededicating and reconsecrating their lives to faith and belief in the Baptist doctrine—nevertheless, they seriously objected and declined to be a party or to have any part or participation in the exclusion and expulsion of a large body of their fellow members, constituting, in fact, a large majority of the entire membership, from affiliation with and membership in said church and said congregation. In this connection plaintiffs aver that, on the occasion of offering said motion of rescinding the quoted portion of said resolutions, said defendant pastor, under color of his official authority, refused to permit those sponsoring the motion to make any reasonable presentation and explanation of the same, together with their views in support thereof, but instead said defendant pastor, by usurpation of his power and by virtue of his official position, insisted on preaching a sermon for some hour and forty minutes to those of the congregation assembled, wherein and whereby he resorted to all of the means of his power and place and office and browbeat and coerced large number of those present, stifled a full and free discussion of said matter, and having in advance arranged for the attendance of a large number of paid workers theretofore selected and employed by him, together with their relatives and intimate friends, as well as a large number of children of immature years, over whom he exerted the influence and authority of his official place and position—all to the end that the right of reasonable debate would be stifled, in a measure prevented, and thus said defendant pastor accomplished and brought about the defeat of said motion to rescind the quoted portion of said resolution above referred to. * * *

"That said resolution and ordinance has simulated the form necessary to give it validity, and that said resolution, which in substance and in fact excludes and expels from membership from said Baptist Church of Houston, Tex., if not restrained and enjoined from going

into effect, may become valid and effective to expel and exclude these plaintiffs from said church, as well as to expel and exclude other members thereof to whose attention said matter has never been called, or who have through ample and sufficient reasons failed to sign the same, as well as a large number of other members of said church and congregation who have failed or refused to sign the same only because of the objectionable provision added thereto, that 'only those signing the Church Covenant on or before January 1, 1927, constitute the membership of the church'; that unless restrained and enjoined the result of said objectionable portion of said resolution, as above quoted, will result in the expulsion and exclusion of a large majority of said church and said congregation, and that each and all of the same, including plaintiffs herein, will become divested of all interest in and to said property and equities therein as hereinabove described, and that the same will become vested in only those that do sign and subscribe to said Covenant, and that said defendant pastor, together with only a small majority of said congregation, will then have it in their power to hereafter disband said church, sell its property, and divide the proceeds thereof among the then membership of said church, or if this be not attempted or accomplished, nevertheless said property will in all probability be sacrificed and lost through foreclosure proceedings on account of the small minority left in said church being unable to discharge the existing indebtedness against said property, which result would likely and probably follow on account of the inability of such small minority or from the confusion and lack of harmony which would in all probability prevail following such a wholesale exclusion and expulsion from membership of said church. In this connection plaintiffs aver that, in addition to the property rights to which they are entitled, there is another and to them more important right and privilege which they have to their membership in said church and in said congregation, together with the privileges of attendance upon and worship in said church as well as the full rights, benefits, and advantages of affiliation with and fellowship in said church and said congregation and by reason of their long and sincere attachment to said church and congregation, the same has to them a value not capable of ascertainment in dollars and cents, and that on the whole the arbitrary and drastic manner in which the defendant pastor is attempting to oppress them is unfair and unjust, and, unless restrained and enjoined by the court, the results herein set forth and referred to will undoubtedly ensue.

"That each Baptist Church is complete in itself; its decisions are subject to revisal by no ecclesiastical tribunal on earth; that there is no tribunal or adjudicatory body within the Baptist Church to appeal to or to secure any redress whatsoever from; that plaintiffs herein exhausted all remedies possible in the Baptist Church; that these plaintiffs have a contract right to membership in said church and a contract right not to be expelled therefrom except upon grounds recognized in the customs and usages of the Baptist Church; that no ecclesiastical question is involved in this case; that the sole question involved is whether a portion of the congregation can arbitrarily compel another portion of the membership thereof to follow their dictates and to again

comply with requirements which these plaintiffs have heretofore complied with and which obligation heretofore assumed by plaintiffs is now in full force and effect; that these plaintiffs, and all others similarly situated, are without due and adequate remedy at law and are without any remedy whatever other than by injunction and restraining orders; that their damages as to amount are conjectural, but that the wrongs and injuries resulting from the acts herein complained of are irreparable; and that there is no adequate remedy at law."

The prayer of the petition is for an injunction restraining defendants in the respects before stated.

None of the defendants other than J. B. Leavell filed any answer or made appearance upon the hearing of the application for temporary injunction.

The answer of defendant Leavell contains a general demurrer and numerous special exceptions, the nature of which need not be stated. He also specially denied under oath most of the material allegations of the petition. This sworn answer further avers, in substance:

"That during the year 1926 it became necessary for the church to give consideration to the condition of the church roll of membership and to the matter of church discipline and to the reconsecration of its members to the church and its work, all of which a majority of the active members of the church earnestly desired, and to that end it was proposed to have all members of the church take up for consideration the rededication of their lives to the faith, creeds, and religion of the Baptist faith; that thereafter the following resolution was finally adopted by the membership of said church, and that those who have signed the same constitute the defendants sought to be reached by this suit, and the parties plaintiff who are named in plaintiffs' petition, and no others, are actively prosecuting this litigation, which is as follows, to wit:

"Resolution, as adopted by the First Baptist Church, Houston, Tex., in its regular business session, Wednesday evening, November 7, 1926:

"Whereas, in the year of 1841, a group of consecrated baptized believers in our Lord Jesus Christ banded themselves together under the following Covenant:

### "COVENANT.

" 'Having been led, as we believe, by the Spirit of God, to receive the Lord Jesus Christ as our Savior and on the profession of our faith, having been baptized in the name of the Father, and of the Son, and of the Holy Ghost, we do now in the presence of God, and each other, most solemnly and joyfully enter into covenant with one another as one body in Christ.

" 'We engage, therefore, by the aid of the Holy Spirit, to walk together in Christian love, to strive for the advancement of this church, in knowledge, holiness, and Christ likeness, to promote its spirituality and prosperity, to attend its services, to sustain its worship, ordinances, discipline, and doctrine, and to contribute cheerfully regularly, according to our ability, to the expenses of our church, the re-

lief of the poor, to Christian education, and the spread of the Gospel through all nations.

" 'We also engage to maintain family and secret devotion, to religiously educate our children, to seek the salvation of our kindred and acquaintances, to walk circumspectly in the world, to be just in dealings, faithful in our engagements, and exemplary in our deportment, to avoid all tattling, backbiting, and unrighteous anger, to abstain from the sale and use of intoxicating drinks as a beverage, and to be zealous in our efforts to advance the kingdom of our Savior.

" 'We further engage to watch over one another in brotherly love, to remember each other in prayer, to aid each other in sickness and distress, and at all times to cultivate Christian sympathy in feeling and courtesy in speech, to be slow to take offense, but always ready for reconciliation, and mindful of the rules of our Savior to secure it without delay.

" 'We moreover engage that when we remove from this place, we will soon as possible unite with some other church where we can carry out the spirit of this Covenant and the principles of God's word.'

"Organizing the First Baptist Church at Houston, Tex., declaring by said act that they and their successors would ever, God helping, declare the Gospel of our Lord and Master; walk circumspectly before men; ever striving as the Apostle Paul to 'press toward the mark for the prize of the high calling of God in Christ Jesus'; and,

"Whereas, from that time there have been added year by year to the church the names of those who have applied for membership by letter and after a public profession of faith and baptism, until at the last annual meeting of Union Baptist Association this church reported 5,022 members, which report we believe to be inaccurate and misleading, owing to the fact that the church has no vital contract nor is able to locate many of the members whose names appear therein; and,

"Whereas, now in these latter days the world seems to bid more and more for those who follow after the tenets and teachings of the greatest of all Teachers, offering a life of sinful pleasure, desecration, and hypnotizing ease, bidding for the church to come out into the world, to such an extent that it would seem the church is fast becoming more worldly; and,

"Whereas, it is desired that our members, in these perilous times, reflect more seriously on things eternal, and, recalling the loves and works of the church's forefathers, who are, possibly at this moment, watching us from the battlements of heaven, that we reconsecrate our lives to God and the church:

"Now, therefore, in accordance with the action of the church in conference November 10, 1926, be it resolved by the First Baptist Church at Houston, Tex.:

"First. That we call our entire membership to a larger and greater service for the Master, rededicating our lives and means to His cause.

"Second. That we each renew our Church Covenant, and designate Sunday, November 21, 1926, for that purpose, showing our earnestness by actually subscribing our names thereto, and that thereafter all new applicants for membership in this church sign the Church Covenant before admission to full fellowship.

"Third. That only those signing the Church Covenant on or before January 1, 1927, constitute the membership of this church; the attitude of the church, however, towards all members who have been dropped is and shall be, one of loving solicitude and invitation to renew their vows by signing the Church Covenant and presenting themselves for church membership."

Defendant further answered by alleging that he is the pastor of said church and moderator over its conferences respecting the adoption of the resolution finally passed by the church at its regular annual conference on November 17, 1926, and again reaffirmed by the said church in conference duly assembled on December 8, 1926, which resolution had its origin in a committee of five members of said church, who were selected by order of the church assembled in conference as a committee of revision of the church roll and church discipline at a meeting of the conference held in the church building on October 6, 1926.

Defendant averred that the resolution above set forth was prepared by said committee after the said committee had been duly and regularly selected in the church building on October 6, 1926, was presented to the church at a regular conference on November 10, 1926, by report of said committee, and, on motion made and duly seconded that it be adopted, and after it was fully and freely discussed, both by the opposition thereto and those that favored the same, and without let or hindrance, and after request on the part of defendant J. B. Leavell said resolution was duly adopted and same was referred by a majority of those present and voting to the board of deacons of said church to be considered by said board of deacons on the following Wednesday, November 17, 1926, to which date said regular conference of November 10, aforesaid, was adjourned; that in accordance with said action of the church in referring said resolution to said board of deacons, composed of about 40 members of the church, said board was called together at said church, 25 members being present and participating, said resolution was considered and, after a few changes had been made, the one set out hereinbefore was unanimously adopted by the board of deacons of said church present at said meeting, and that thereafter, to wit, on the 17th day of November, 1926, said board of deacons submitted their report and recommended the adoption by the church of said resolution in the form in which said deacons had prepared it, which said form is in the identical language and arrangement set out above, and the said board of deacons recommended to the regular church conference of November 17, 1926, the adoption of said resolution in its form as proposed by them at said time.

Defendant further shows that upon the reading by one of said deacons of said resolution at said meeting held on the 17th day

of November, 1926, and after same had been thoroughly discussed by all who desired to have anything to say about it, and after motion for the adoption of same had been duly and properly seconded, said defendant J. B. Leavell, pastor of said church and moderator, having called for a discussion of said resolution as proposed by said board of deacons, and, as aforesaid, after said resolution was fully and freely discussed pro and con by said members of said church, defendant Leavell having made a statement of his views in respect thereto after he had been requested to do by the members of the conference, and after all persons at said conference had concluded their argument and discussion of said resolution, and after a counter or substitute resolution offered by the opposition as an amendment had been voted down by a standing vote of 141 against the amendment and 70 for the amendment, a rising vote was taken on said motion to adopt said resolution as presented by said board of deacons, and the vote thereupon stood 141 for the adoption of said resolution as finally adopted and 61 against its adoption; that thereafter a meeting of some of the dissatisfied members of said church who opposed the adoption of said resolution and a few of the members of said church favoring said resolution met at the Baptist Church, the pastor being present, and at that time the opponents of said resolution requested that the church allow said resolution to be reconsidered by the church at its regular conference in order that the opposition to the said resolution might present in such form as they saw fit their objections thereto or to such part thereof as they may object, which said request was made at said meeting by one of the plaintiffs herein, J. M. Minton, and in response to his said request defendant J. B. Leavell and those present at said meeting favoring said resolution consented to the reopening of said matter at the next conference of said church as requested by the said Minton, and it was then and there understood that reconsideration of said resolution and the action that had been taken thereon would finally and definitely settle and determine the matter. It was averred under oath that a full, regular conference of said church thereafter convened on the 8th day of December, 1926, and that from and after the passage of said resolution on November 17, 1926, the members of said church opposing said resolution, as naturally would have been the case, actively canvassed the membership of the said church in behalf of their opposition to said resolution and many of them called at the church and asked to and were given free permission to consult the membership roll of said church and took therefrom any and all names of members thereof, together with their addresses, from said church roll, and that said opposing members did deliberately and continuously, during said interim,

seek out, 'phone, call on, and in every possible way communicate with the membership of said church with the view of converting them to their opposing view of said resolution, and urged them to attend said conference of December 8, 1926, to oppose said resolution, and during said time the clerical force of said church likewise addressed communications through the mail to every member of the church, as shown on said roll, at the address given as it appears on said church roll, without regard to whether said members were opposed to or favorable to said resolution advising that said resolution would come up for final action and determination at said conference December 8, 1926, and urging upon all members of said church the duty of attending said conference, participate in said action, and thus and thereby an active and thorough canvass by both factions was made of all said church membership, resulting in the attendance of said members of said church at the conference of said church on December 8, 1926, of something more than 800, that being doubtless the largest conference held by said church within the memory of any person now or at that time a member thereof. That at said regular conference on December 8, 1926, the pastor of said church, the defendant J. B. Leavell, stated in effect that due to the fact that many members were present at said conference who had not theretofore attended said conference, especially during the time said resolution had been before the church, and were not acquainted with the former action of the church except in a general way, he felt it proper to make some remarks in connection therewith, whereupon objection was made by someone opposing said resolution, and, in order that the matter of his speaking might be disposed of, a motion was made that the pastor be allowed or permitted to make such remarks as he felt proper to make, and that by a standing vote about two-thirds of the membership of the said church then present and voting favored the pastor's making such statements as he saw proper to make, and that defendant pastor did then and there fully discuss said resolution, giving Scriptural references for the action the church had taken and was again to consider; that at the conclusion of the remarks of the pastor, which lasted something over an hour, plaintiff J. M. Minton took the pulpit of the church and made the following motion:

"To rescind, make void, and remove from the records that part of the resolution adopted by the church on November 17, 1926, which provided that only those signing the Church Covenant on or before January 1, 1927, constitute the membership of the church."

That after said motion had been made and seconded as aforesaid, the said Minton discussed the same and then and there gave his reasons for such motion to rescind and those upon which the opposition to the resolution

acted and after the conclusion of his remarks the defendant Leavell, acting as moderator, invited any and all other members of the church then present, regardless of which side they favored, to discuss said motion of the said Minton, and no person, either for or against said motion, offered to make any speech or remarks, either for or against said motion, nor did the pastor make any further remarks in respect thereto, and a rising vote was thereupon taken. All members of said church then present who were favorable to said motion were requested to rise and stand until they were counted; tellers were appointed by opposing and favoring sides of said motion in equal number and one from each side went together in each aisle of said church and together counted and agreed on the count of all members then standing; likewise those who were opposed to said motion rose and were in the same manner and by the same tellers counted, said count agreed upon, and thereupon said count, pro and con, on said motion was tabulated in the presence and under the inspection of said tellers, which resulted in 278 in favor of said motion made by said Minton and 589 opposed to said motion made by said Minton, and said vote was handed to said moderator and by him announced, and the motion was then and there declared lost. Defendant showed further that one of those members present and voting in favor of said motion immediately thereafter then and there moved that said vote by which said motion was lost be made unanimous, which motion was duly seconded, and a rising vote taken thereon without argument, which vote resulted in a very few of the opposing members remaining seated, thus showing that the final vote of said conference, participated in by over 800 of the members thereof, was almost unanimously against said motion of said Minton and for leaving the said resolution in its original form as adopted on November 17, 1926.

Defendant further showed that most of the plaintiffs signing the petition in this cause were present, together with practically all known opponents of said resolution, and participated in said determination, discussion, and votes taken on final determination of the body and should in all good faith and conscience be bound thereby.

Defendant further asserted that all minutes pertaining to said church actions and procedure are of record in the files of said church, and that no act or deed of the defendant was not disclosed to the membership of the said church and well known to the members; that any member is free to examine any and all church documents at any reasonable time, which fact is known to plaintiffs. Defendant further showed that the actions of said church referred to in his answer were all freely and openly conducted, no irregularity of procedure was permitted by any one on either side of the controversy;

and that any and all actions of said church ocnstituted inside and internal governmental affairs of said church and are conclusive and binding on each member of the First Baptist Church of Houston, Tex.

The hearing on the application for temporary injunction was upon the sworn pleadings before set out, no evidence having been introduced by either party.

After hearing the pleadings and the arguments of counsel, the trial court concluded that it was "without jurisdiction herein," and plaintiffs' petition was "subject to general demurrer and was without equity," and rendered judgment accordingly.

[1] We have before said that appellants' brief does not contend that their petition shows such an invasion of their property rights as entitles them to relief by injunction. We so understand the brief, but if we have misinterpreted appellants' claim in this respect, the petition must be held insufficient to show any invasion of property rights of appellants which entitles them to relief. If they are still members of the church, and as such entitled to prevent the officers of the church from diverting the church property to any purpose other than that to which it was dedicated, there are no allegations of such diversion by appellees.

[2] As we understand the record, the question presented by the appeal is the right of a majority of the members of the congregation, voting at a meeting regularly called for that purpose and in which appellants participated, to require appellants, in order to retain their fellowship and standing as members of the congregation, to repledge their allegiance to the faith and teachings of the Baptist Church. It is true that the resolution adopted by the congregation, of which appellants complain, has the effect of severing appellants' fellowship with the church and destroying their rights of membership therein, because of their failure to sign the Church Covenant as required by the resolution, and in so far as their relation to the church is concerned has the same result as would their trial and expulsion from the church.

[3] Accepting as true the allegations of plaintiffs' petition, that according to the customs and usages of the Baptist Church a member can only be expelled after regular trial upon charges duly preferred, and of which he has been given due notice, and assuming that the method by which appellants were excluded from membership was violative of the usages, customs, and law of the church, the question remains as to whether the member so expelled or excommunicated can appeal from the judgment of the highest church tribunal to the civil courts for restoration of their membership. We think the trial court correctly decided this question. It seems to be settled law in this land of religious liberty that the civil courts have no power or jurisdiction to determine the regularity or

validity of the judgment of a church tribunal expelling a member from further communion and fellowship in the church. Membership in a church creates a different relationship from that which exists in other voluntary societies formed for business, social, literary, or charitable purposes.

Church relationship stands upon a different and higher plane, and the right of a church to decide for itself whom it may admit into fellowship or who shall be expelled or excluded from its fold cannot be questioned by the courts, when no civil or property rights are involved.

The Supreme Court of Tennessee, in the case of Nance v. Busby, 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801, thus clearly states what we regard as the sound and settled rule:

"Civil courts deal only with civil and property rights. They have, in this country, no ecclesiastical jurisdiction. If, to determine a property right, it becomes necessary to adjudge an ecclesiastical question, the courts will go only so far as is necessary to determine the effect of ecclesiastical law or relations on property rights. We are not to be understood as approving an expulsion from church membership by irregular methods and without notice to the member. But here we have a fact to be dealt with—the fact that this church, sitting as a church, has determined for itself that it had the power and the right to exclude these complainants. They have, as a judicature, adjudged that they had the jurisdiction, and that the usage and law of the church did not demand other trial or notice than such as attended the public action of the church. The law of the church provides for no appeal to a higher tribunal. They may have erred in their procedure. It is not for a civil court to revise their action in a matter so vital to their freedom as a church."

The case of Screwmen's Benevolent Association v. Benson, 76 Tex. 552, 13 S. W. 379, and Brown v. Harris County Medical Soc. (Tex. Civ. App.) 194 S. W. 1179, cited by appellants, do not involve the question of the jurisdiction of the civil courts to inquire into and determine the regularity of a decree of a church tribunal upon a matter of church discipline, ecclesiastical government, or the method used in the expulsion of a member, and do not sustain appellants' contention that their petition presented a case within the jurisdiction of the trial court. The reasons for denying the civil courts jurisdiction to question the regularity and finality of the judgment of an ecclesiastical court in a matter of church discipline and membership do not apply to associations like those sued in the cases cited and in each of these cases injury to civil and property rights was alleged and proved.

The congregation which adopted the resolution of which appellants complain was the highest tribunal of the church, and its judgment upon the question of appellants' right to continued fellowship in the church cannot be questioned by the courts. The meeting of the congregation was regularly called, appellants were present and participated in the meeting, and the resolution was adopted by a large majority of the members present. If the courts assume jurisdiction to question the validity of a judgment of a church court upon a question of this character, the churches would be deprived of the right of construing and administering their church laws, and our proud boast of religious liberty and our absolute separation of church and state could no longer be proclaimed.

There is nothing in the case of Bouldin v. Alexander, 15 Wall. 131, 21 L. Ed. 69, which militates against the conclusion above expressed. On the contrary, the following quotation from the opinion in that case sustains our conclusions and differentiates the question there decided from the one presented in this case:

"This is not a question of membership of the church, nor of the rights of members as such. It may be conceded that we have no power to revise or question ordinary acts of church discipline, or of excision from membership. We have only to do with rights of property. As was said in Shannon v. Frost, 3 B. Mon. [Ky.] 253, we cannot decide who ought to be members of the church, nor whether the excommunicated have been regularly or irregularly cut off. We must take the fact of excommunication as conclusive proof that the persons exscinded are not members. But we may inquire whether the resolution of expulsion was the act of the church, or of persons who were not the church, and who consequently had no right to excommunicate others."

In our opinion, the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.