GILBERT vs. THE CRYSTAL FOUNTAIN LODGE; etc.

An action for slanderous words spoken of and concerning the plaintiff
by a mutual aid association, of which he was a member when the
alleged tort was committed, will not lie against the association,
sued as a partnership, but the redress, if any, is against the wrong-
doers in their individual or non-partnership capacity. Nor does
it make any difference in this respect, that in consequence of the
slander, the plaintiff was suspended from the benefits of member-
ship for a term of years, and that the action was brought pending
this term of suspension.

November 1, 1887.

Torts.    Libel and slander.    Partnership.    Actions.
Before Judge VAN EPPS.    City court of Atlanta.    Decem-
ber term, 1886.

Reported in the decision.

GEORGE T. FRY and BROYLES & JOHNSTON, for plaintiff.

HOKE SMITH and J. R. WHITESIDE, for defendants.

BLECKLEY, Chief Justice.

The plaintiff, a minister of the gospel, (and as we con-
strue his declaration, a most worthy and upright man,)
brought his complaint for words against a mutual aid as-
sociation of which he was a member, alleging the uttering
by that association, as a partnership (the suit being against
it as a partnership), of certain words imputing to him, as
he alleges, the offence of obtaining money by false pre-
tences from the association,—cheating and swindling, and
certain other words importing that he was afflicted with
a loathsome and contagious venereal disease.    He alleges
that in consequence of the use of these words, he was sus-
pended from the benefits and privileges of the association
for five years; and he lays general damages in a large
sum for his grievances.    The declaration was demurred
to; the demurrer was sustained, and the action was dis-

missed.   We are now to determine, upon this writ of error, whether there is a cause of action set forth in the declaration.

If, as the declaration alleges, the association was a partnership, the plaintiff was a member of it; and after diligent search, we have been unable to discover any authority supporting the theory that a man can slander himself, either when he speaks directly as an individual, or when he speaks indirectly through a partnership of which he is a member.   Upon principle, we do not see how he could charge the partnership assets with the damages that might be recovered, he having an interest in the assets as part owner of the same.   Nor can we see how he can escape the general rule that, in an action at law against a partnership, all the partners, so far as the partnership assets are involved, must be defendants.   That rule, applied to this case, would require the plaintiff to sue himself.   The equity powers of the court cannot be invoked to overcome this obstacle, for a court of equity has not, nor ever had, jurisdiction to decree damages for defamation or slander.

Turning from the remedy to the wrong itself, there is much doubt whether the facts alleged make out the imputation of a crime or misdemeanor.   In Beckett *vs.* Sterrett, 4 Blackford, 499, an action for slander brought by one partner against another, who had charged the plaintiff with pilfering money out of the partnership store, was maintained; the court holding that there were various ways in which money other than partnership money, could be stolen out of the store; and it must be intended (the court said) that the words import the stealing of something as to which the plaintiff could be a thief.   There is an implication in this that a partner could not be a thief in respect to the partnership assets; and here it was the association or partnership funds that the plaintiff was charged with procuring by misrepresenting the state of his health.   The words imported that he had feigned sickness and drawn relief from the association upon a false pretext.

Had he done so, he would have gotten assets which belonged to himself jointly with the other members of the partnership, and it is at least doubtful whether getting them, though in so disreputable a way, would amount to an offence punishable by law.    But the case as a whole cannot be ruled upon this distinction, because the venereal disease was not a partnership malady.    That was individual property.

Whether a partnership can slander anybody might formerly have admitted of some question; for it is an old rule, going back to Croke's Reports—perhaps farther still, that there could be no joint action against several persons for oral words.    The courts considered that if two uttered the same words simultaneously, the vocal act of each would have a separate identity, and be an individual act; and so actions for such torts ought to be several and not joint. It seems there was finally a sort of judicial acquiescence in the theory that a slanderous song, chanted in concert by a number of voices, would lay the foundation for a joint action against all the musicians; and this appears to be as far as decisions have gone, save where the "New Orders" could be cited.    That defamatory music is not mere melody but may be treated as harmony, is perhaps good law.    On principle, we can think of no reason why a partnership might not slander a third person through agents or members, authorized and empowered to defame orally; or by adoption and ratification, after defamation by slanderous words.    The difficulty in the present case is, not alone that the partnership could not slander anybody, but that it could not slander a member of the firm, he being so united to the partnership that there could be no partnership tort that would not involve him as a tort feasor; and he could not be both agent and patient in the infliction of an injury.    Cases of defamation growing out of jars and bickerings amongst the members of associations, religious as well as secular, are, unfortunately, too numerous.    Many of them are summarized and discussed

in Shurtliff *vs.* Stevens, 51 Vt. 501, itself a case of much interest, and quite instructive on the literature of the subject. Such actions are not to be encouraged, but rather discouraged, and we are not sorry to mete out strict law against them.

The declaration enables us to fix with certainty that the grievances complained of were committed before there was any suspension. So that even if suspension be in effect expulsion, the plaintiff was not suspended at the time the alleged tort was perpetrated.

Judgment affirmed.