**C. A. ABRAMS, d/b/a C. A. Abrams and Company, Appellant,**

v.

**W. S. BRENT et al., Appellees.**

No. 11029.

Court of Civil Appeals of Texas.

Austin.

Nov. 7, 1962.

Rehearing Denied Nov. 28, 1962.

Lefkowitz, Green, Ginsberg, Eades & Gilmore, Dallas, for appellant.

W. J. Durham, Dallas, for appellees.

HUGHES, Justice.

C. A. Abrams, d/b/a C. A. Abrams and Company, Contractor, sued W. S. Brent, pastor, and eleven trustees of the Mount Horeb Missionary Baptist Church for damages for breach of a written contract to construct a new building for the church.

Trial was to a jury. When appellant rested his case, the Trial Court withdrew the case from the jury and rendered judgment for appellees.

It was stipulated by the parties that the Mount Horeb Missionary Baptist Church was an unincorporated religious association with an independent congregational form of government, and that the pastor and

deacons of the church have no authority to act for the church except by a majority vote of the congregation.

Mr. Horace Joiner who had been a member of the church for thirty-two years and one of its trustees for twenty-seven years and one of appellees testified to the manner in which the church conducted its business affairs. We quote his testimony regarding the matter in controversy:

"Q Did you act as a trustee in the purchase of the lot on which this church was to be built.

"A Yes, sir.

"Q Now, after that lot had been purchased, was there any discussion with the congregation as to the opening up of negotiations to get a builder to build a church on that lot?

"A Yes, sir.

"Q Would you explain to the Court and Jury how the group that was to obtain a contractor was appointed, or was authorized?

"A Well, we was authorized to look out for the lot at first, and then we was authorized by the church to build a church.

"Q All right; now, was there any action taken on a Sunday when the church congregation was in session with reference to the trustees looking for a contractor?

"A Well, they acknowledged us; it was on Sunday. And everybody stood up in our behalf.

"Q All right now; approximately when was this that everybody stood up?

"A I really don't remember.

"Q Was is before the contract papers were signed?

"A Before? Let's see; it was—they acknowledged us—that was before they were signed.

"Q All right, now; go ahead and explain what the minister did and what the congregation did.

"A Well, the congregation stood up to acknowledge us; and after they stood up, then the pastor went down through the congregation to see that everybody was standing up. That was the day they acknowledged the trustee board. Then when it was over, he told us, he said, 'Now these are the men responsible for building your church'. Them was the last words he said.

"Q All right, now; who were the trustees that were acknowledged that day?

"A Well, it was eleven of us."

Mr. Stanley Jackson, church trustee and one of appellees, testified regarding the same congregational meeting, "Reverend Brent, he was authorizing the trustees to go out and seek a contract, to secure a loan, for the purpose of building the new building we were to build, and we were to go out and find a contract and bring it back to the church. * * * He (Rev. Brent) was getting a vote from the church."

Mr. Jackson further testified that Reverend Brent on this occasion told the congregation he wanted them to appoint a committee of trustees "To seek for a building contractor and a loan."

All of appellees were church trustees except Reverend Brent.

The action of the church, above indicated, was by a majority of its congregation.

It is not clear just when the congregational meeting above referred to was held. It is shown that it was before the contract and other instruments relating to the construction of the church were signed by the trustees.

The testimony shows that during the months of May and June, 1960, Reverend Brent and some of the church trustees visited appellant in San Antonio and negotiated with him regarding the construction of the

church. Other meetings for the same purpose were held in Dallas between appellant and the trustees. On July 6, 1960, a Builder's and Mechanic's Lien Contract having been previously signed was acknowledged before a Notary Public by appellant and appellees, except Reverend Brent, acting as trustees for the Mount Horeb Missionary Baptist Church for the construction of a church building in accordance with certain plans and specifications prepared by Architect Lawrence A. Collins in consideration of the payment of $10,000.00 cash and deferred payments amounting to $210,000.00. A note in such sum was similarly executed by the trustees in their representative capacity. This instrument recites that "This is an obligation of the Mount Horeb Missionary Baptist Church, Dallas, Texas, and the undersigned Pastor and Trustees of said church certify that they, and each of them, have been granted proper and sufficient authority by the church to so execute the same." The pastor did not sign the note.

As further security for the payment of the church obligations to appellant, the pastor, the eleven trustees and 206 members of the congregation signed limited personal guarantees in his favor.

After execution of the building contract, the church held ground breaking ceremonies on the lot site. Publicity of this event was given in the press; the pastor announced it in the church; pictures were taken, and the proceedings were televised. "* * * it was a big ground breaking. * * * they had a feast that afternoon and everybody enjoyed themselves. * * * quite a large group" was there.

Following the execution of the contract, appellant, at the request of Reverend Brent, procured a building permit for the construction of the church. Appellant in preparing to commence construction of the church incurred $1309.22 in expenses, which consisted of moving his equipment from San Antonio, constructing a tool house at the site and in procuring credit reports for the finance company which was to lend to the church a portion of the building cost.

The rules for granting directed verdicts or in withdrawing cases from a jury are well settled and will not be fully restated here. See McDonald, Tex.Civ. Practice, Vol. 3, Sec. 11.28. Briefly, the Court is required to view the evidence in a light most favorable to the party against whom the motion is directed, and indulge every reasonable inference therefrom favorable to such party, and to discard and not consider all evidence favorable to the moving party not of a conclusive nature. In applying this rule to this case, it is our opinion that the Trial Court erred in withdrawing the case from the jury.

We believe that liberally construing the evidence it is not unreasonable to infer therefrom that the congregation authorized the eleven trustees to build a church for them and that this authorization would include all matters incidental or reasonably necessary to the fulfillment of this objective. Certainly, it would include the procurement of a contractor and the execution of a building contract. These are customary and essential requirements in the construction of a building of the size contemplated here.

We are also of the opinion that the conduct of the congregation, or considerable numbers of it, and the pastor in executing individual guarantees for performance of the church's obligation under the building contract and in participating in the ground breaking ceremonies are admissible and relevant to establishment of the true meaning of the authority given by the congregation to the eleven trustees in the event such authority is ambiguous and we are in error in holding the original authorization sufficient within itself to sustain the validity of the contract.

It is also our opinion that the evidence clearly raises fact issues with respect to estoppel of the congregation to deny the authority of the trustees in executing the

contract and ratification of such authority, all as pleaded by appellant.[1]

 Appellees' First Counterpoint is to the effect that no breach of the contract by the church is shown by the evidence. Appellees at great length by a current pleading alleged the non-existence of any binding contract on the church or its pastor or appellee trustees. This was a repudiation of the contract. Repudiation of a contract is a breach of contract. 13 Tex.Jur.2d, Contracts, Sec. 306. Furthermore, appellant testified that one of the church trustees ordered him to move his tool house from the church property. This is some evidence of the breach of contract by the church. The record reflects that the church was not built, and, assuming that there was a valid contract, there is no pleading that the church was ready, able or willing to perform the contract. Appellees merely deny the existence of a contract. We overrule this counterpoint.

In view of a re-trial, we believe it our duty to express an opinion upon the question of the personal liability of appellees upon the building contract and note executed by the trustees in their trust capacities.

 In Mood v. Methodist Episcopal Church South, Tex.Civ.App., 289 S.W. 461, affirmed Tex.Com.App., 296 S.W. 506, Tex. Com.App., 300 S.W. 30, rehearing overruled, it is held that members of an unincorporated religious association who incur a debt for the association or who assent to its creation are personally liable therefor. See also Redden v. Capps, 15 S.W.2d 670, El

Paso Civil Appeals; 76 C.J.S. Religious Societies, § 29–f; 45 American Jur., Religious Societies, Sec. 25. Of course, personal liability could be contracted against.

The judgment of the Trial Court is reversed and this cause is remanded.

Reversed and remanded.

1. In St. Louis Union Trust Co. v. Oregon Annual Conference of the Methodist Episcopal Church, 14 F.Supp. 35, the Court stated:

"The attempt of congregations to escape liability for indebtedness incurred for the society, by persons not specifically authorized, is not novel in American church law. Such endeavors are inherent in such loose structures composed of persons of little business training, predisposed to look to the glory of the end desired, rather than to the consequences of failure. Under such circumstances, the judicial tendency has been to hold these bodies liable if the acts primarily unauthorized, have been ratified. But the debt must have been incurred in a project within proper church purposes. The sovereign authority must have been informed as to the facts, although proof of this may be inferential. If these conditions concur simultaneously, any acts which indicate approval of a course of action or acknowledgment of the obligation is sufficient."