### 23469

William C. CROCKER, Petitioner v. Reverend Ernest BARR, Billy Boggs, Larry Brown, Emory Brown, Henry Manning, Jr., Wayne Whidby, Reverend Virgil Manning, Thomas Stroud, Wendel Boggs, James B. Reynolds, Sandy Hilly, Melvin Crider, and Howard Powell, individually and as present or former board members of the Calhoun Falls Pentecostal Holiness Church, Respondents.

(409 S.E. (2d) 368)

Supreme Court

*Thomas E. Hite, Jr.*, Abbeville, and *Marvin R. Watson*, Greenwood, *for petitioner.*

*David B. Betts*, Chapin, *for respondents.*

Heard June 12, 1991; Decided Sept. 9, 1991.

Rehearing Denied Oct. 18, 1991.

TOAL, Justice:

This personal injury action arises on a writ of certiorari to review the Court of Appeals' reversal of a jury verdict for the plaintiff. We reverse.

## FACTS

The plaintiff, Crocker, was a member of the Calhoun Falls Pentecostal Holiness Church, an unincorporated association. On December 5, 1985, Crocker, at the minister's request, voluntarily entered the church's attic to fix the sound system. While in the attic, Crocker noticed an extra wire not connected to the sound system which he decided to remove. Difficulty with the wire forced Crocker to leave the floored portion of the attic, and to proceed by stepping out onto the exposed ceiling joists. Using the rafters for support, Crocker crossed the ceiling joists to gain access to the wire. Unfortunately, during some previous construction on the church, one of the rafters had been cut and left unsecured. Crocker stepped on the joist attached to the unstable rafter and, as a result of the ensuing movement, fell approximately ten (10) feet through the ceiling to the concrete floor below. Crocker's injuries from the fall were responsible for approximately $36,850.00 in medical bills and almost ten months of lost wages from work.

This case has a tortured procedural history. Crocker's initial suit against the church was dismissed by the lower court for failure to state a claim upon which relief could be granted. The rationale for the dismissal was the doctrine of imputed negligence (where a member of a voluntary unincorporated church association cannot maintain an action in tort against the association for injuries sustained through the negligence of his fellow members). *Crocker v. Barr*, 295 S.C. 195, 367 S.E.

(2d) 471 (Ct. App. 1988) (hereinafter *"Crocker I"*). The Court of Appeals, while affirming the lower court's dismissal, noted that the plaintiff could recover individually from the member, or members, of the association actually responsible for the injury.

Crocker then filed the action resulting in this appeal against the various pastors and church board members, serving at the time of the church's construction or at the time of his fall. It should also be noted from the record that prior to trial the parties agreed to "not record, execute or otherwise attempt to collect any judgment . . . obtain[ed] against any one or more of the . . . defendants. . . ." At trial, the case was submitted to the jury on instructions of invitee liability, and the jury awarded Crocker $300,000 in damages. The Court of Appeals reversed the jury verdict, 397 S.E. (2d) 665, and we granted a writ of certiorari to review the decision.

## LAW/ANALYSIS

The questions presented in this case are novel and of first impression in South Carolina. Although other states have addressed this issue, with the exception of the Court of Appeals opinion in *Crocker I,* case authorities in South Carolina are non-existent.

The threshold issue which must be addressed is, whether a member of an unincorporated association may maintain an action in tort against the other members of the association, and if so, under what theory of liability?

The cases allowing actions to be maintained by members of an association have run the gamut from labor unions to condominium associations, and have generally relied on the various statutes which allow for legal action against an unincorporated association. *Marshall v. International Longshoremen's and Warehousemen's Union,* 57 Cal. (2d) 781, 22 Cal. Rptr. 211, 371 P. (2d) 987 (1962); *Fray v. Amalgamated Meat Cutters and Butcher Workmen of North America,* 9 Wis. (2d) 631, 101 N.W. (2d) 782 (1960); *Murphy v. Yacht Cove Homeowners Association,* 289 S.C. 367, 345 S.E. (2d) 709 (1986); *See also* S.C. Code Ann. § 15-5-160 (1976) (allowing unincorporated associations to be sued).

*Joseph v. Calvary Baptist Church,* 500 N.E. (2d) 250 (Ind. Ct. App. 1986), presents a strikingly similar fact situation. The

plaintiff in that case was a member of the church who was asked to assist with the replacement of the church's roof. After falling from the roof due to another church member's negligence, he sought recovery against the association itself. The rule espoused in *Joseph* is in direct opposition to the rule cited in *Crocker I*. The court held in *Joseph* that churches, just as other unincorporated associations, were amenable to suit by their members for tortious acts. *Id.*

In reaching this decision, the Indiana Court of Appeals relied on the Indiana statutes which sever the liability of the association from the liability of its members. South Carolina Code Ann. § 15-35-170 (1976) addresses judgments against unincorporated associations. The section reads,

> On judgment being obtained against an unincorporated association under process served as provided . . . final process may issue to recover satisfaction of such judgment, and any property of the association and the individual property of any copartner or member thereof found in the State shall be liable to judgment and execution for satisfaction of any such judgment. *Id.*

The South Carolina statute leaves the option open to allow for the recovery of a judgment against the individual members of the association.

The Court of Appeals in *Crocker I* distinguished *Joseph* based on the difference in character of the relevant statutes. The Court held that a suit could only be maintained against individuals responsible for the tort. The inquiry should not end here, however, because of the case law interpreting the predecessor of § 15-35-170. In *Elliott v. Greer Presbyterian Church*, 181 S.C. 84, 186 S.E. 651 (1936), the court said that while each member of an association became a party to the action when the complaint was served upon an officer of the association, and while plaintiffs have the right to enter judgment against all or any one of the members, no liability arises against any member unless judgment is entered against such member by plaintiffs. *Id. Elliott* acts to sever the liability of an individual association member in much the same manner as the Indiana statute cited in *Joseph*.

The church defendants argue for the applicability of S.C.

Code Ann. §§ 33-55-200 *et seq.* (1990).[1] The thrust of their argument is that any legal action should be barred without a showing of recklessness, wantonness, or gross negligence by an employee. We agree that the statutes apply but reach a different conclusion as to their application.

S.C. Code Ann. § 33-55-200 defines a charitable organization for purposes of §§ 33-55-200 through 33-55-230 as, "any organization, institution, association, society, or corporation which is exempt from taxation pursuant to Section 501(c)(3) or 501(d) of Title 26 of the United States Code. . . ." It is undisputed that the church is in fact a tax exempt association under § 501(c)(3) of Title 26. This places the church squarely within the definition of a charitable organization for purposes of these statutes.

When § 33-55-210 is scrutinized, it becomes clear from the language that a severance of liability between the church and its members exists. The statute reads in part:

> *[A]ny person* sustaining an injury or dying by reason of the tortious act of commission or omission of an employee of a charitable organization, when the employee is acting within the scope of his employment, *may only recover in any action brought against the charitable organization in an amount not exceeding two hundred thousand dollars.* An action against the charitable organization . . . constitutes a complete bar to any recovery by the claimant . . . against the employee . . . *unless* it is alleged and proved in the action that the employee acted in a reckless, wilful, or grossly negligent manner. . . . *Id.* (emphasis added).

---

[1] The concept of charitable immunity for unincorporated associations has been challenged repeatedly. In *Decker v. Bishop of Charleston*, 247 S.C. 317, 147 S.E. (2d) 264 (1966), we held that the court should exercise judicial restraint and allow the General Assembly to withdraw the tort immunity of charitable institutions. We maintained this position until 1981 when the landmark case of *Fitzer v. Greater Greenville South Carolina YMCA*, was decided, 277 S.C. 1, 282 S.E. (2d) 230 (1981). Stating that a rule which is no longer serving a legitimate purpose should not be followed, this court held that a charitable institution was subject to liability for its tortious conduct. *Id.* In response to *Fitzer*, the General Assembly enacted legislation in 1984 to address the abolishment of the doctrine of charitable immunity. In S.C. Code Ann. §§ 33-55-200 *et seq.*, the legislature embraced the rule outlined in *Fitzer* and established statutory caps on the amount of damages recoverable in a suit against a charitable organization. It is against this historical framework that we view the case at bar.

The statute illuminates three important points. First, it severs the liability of church members from the church. This accomplishes the very result statutorily as that reached by the court in *Joseph, supra,* and disputed in *Crocker I* by the Court of Appeals. The statute also confirms the willingness of the General Assembly to allow legal actions against a charitable organization. The General Assembly severed the liability of the membership from the association, and placed a monetary limit on judgment awards. Finally, the requirement to show recklessness, wantonness, or gross negligence of an employee only applies if judgment is to be sought from the employee *as well* as the association. The language of § 33-55-210 clearly contemplates liability actions against unincorporated associations, including churches holding tax exemptions, and is in direct conflict with the decision in *Crocker I.*

Today, it is clear that many institutions must rely to a large extent on volunteer labor. The government requests and supports volunteerism, and with rising costs, many associations could not survive without this support. It ignores reality to leave a volunteer with no recourse against wrongdoers. The rule established by the Court of Appeals in *Crocker I* chills the very volunteerism that unincorporated associations require. Why should a church member be precluded from suing an association in tort when a paid workman would be allowed to maintain an action for the very same injury? The underlying policy, in support of volunteer labor, testifies to the soundness and validity of the rule stated in *Joseph.*

It is unnecessary to single out a religious association from other unincorporated associations. Adoption of the rule in *Joseph* would give South Carolina the advantage of consistency in the treatment of different unincorporated associations. Accepting the concept of *Joseph* would harmonize this decision and S.C. Code Ann. §§ 33-55-200 *et seq.* with the generally accepted principles of law followed by the majority of states. *See Marshall,* 57 Cal. (2d) 781, 22 Cal. Rptr. 211, 371 P. (2d) 987 (1962); *Fray,* 9 Wis. (2d) 631, 101 N.W. (2d) 782 (1960); *Murphy,* 289 S.C. 367, 345 S.E. (2d) 709 (1986); and S.C. Code Ann. § 15-5-160 (1976) (allowing unincorporated associations to be sued).

The last issue to address is whether the jury was properly charged on the theory of invitee liability. The invitee in South

Carolina is defined in *Parker v. Stevenson Oil Co.*, as one who enters upon the premises of another at the express or implied invitation of the occupant, especially where he is on a matter of mutual interest or advantage, 245 S.C. 275, 140 S.E. (2d) 177 (1965).

The church benefitted from the use of Crocker's labor. The pastor of the church expressly requested Crocker's efforts to save the expense of having repairs done on the sound system by an outside repairman. To quote the Indiana Court of Appeals, the furthering of "church purposes . . . which it might not have been able to do without Joseph's labor . . . was material." *Joseph* at 254. The question of invitee status was presented to the jury by the trial court, and the jury here, just as in Indiana, found the plaintiff to be an invitee.

We hold that in South Carolina an unincorporated association, regardless of its underlying purpose, is amenable to suit by its members for tortious acts. The case which was presented to the jury appears to us to be a fictional application of the earlier rule in *Crocker I*. The parties, in applying the concept of suing the individual member, both stipulated that the insurance company would pay any judgment. The parties went further by agreeing that a judgment would not be entered against any particular individual, and during the course of the trial, the defendants acknowledged the board's responsibility to Crocker. This has the same effect as a direct action against the association, which is in full accord with the rule we adopt today. We therefore find that the fictional application of *Crocker I* is harmless error and does not taint the findings of fact by the jury.

The jury also awarded Crocker $300,000, which is not in compliance with the statutory maximum allowed in S.C. Code Ann. § 33-55-210. We therefore find it necessary to reduce the jury award to comport with the statutory maximum of $200,000 provided in § 33-55-210.

Accordingly, the Court of Appeals in *Crocker v. Barr*, 397 S.E. (2d) 665 is reversed, and the jury verdict is reinstated as modified in the amount of $200,000 as required by S.C. Code Ann. § 33-55-210. So much of the earlier opinion in *Crocker v. Barr*, 295 S.C. 195, 367 S.E. (2d) 471 (Ct. App. 1988), as is inconsistent with this opinion is

Overruled.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.