Karen COX, Petitioner,

v.

**THEE EVERGREEN CHURCH a/k/a Thee Evergreen Congregational Church, Respondent.**

No. D–0938.

Supreme Court of Texas.

July 1, 1992.

Rehearing Overruled Sept. 9, 1992.

Timothy R. Cappolino, Conroe, for petitioner.

Michael C. Neel, Houston, for respondent.

## OPINION

HIGHTOWER, Justice.

In this personal injury action, we consider whether a member of an unincorporated charitable association is precluded from bringing a negligence action against the association solely because of the individual's membership in the association. The trial court rendered summary judgment for the association. The court of appeals affirmed. 804 S.W.2d 190. We reverse the judgment of the court of appeals and re-

mand the cause to the trial court for further proceedings.

## I.

██ Karen Cox (Cox) was a member of Thee Evergreen Church (Evergreen), an unincorporated charitable association.[1] Cox had been a member for four years and held a position on Evergreen's administrative board. On November 4, 1986, Cox dropped her son off at a "mothers day out" program, for which she paid a nominal fee, operated on Evergreen premises by volunteer members of the church.[2] Upon entering the church, Cox slipped and fell, injuring her back and head. Cox brought an action against Evergreen alleging negligence and gross negligence. The trial court granted a motion for summary judgment filed on behalf of Evergreen on the ground that a member of an unincorporated charitable association lacks standing to maintain an action against the association. The court of appeals affirmed.

Cox argues that a member of an unincorporated charitable association should not be precluded from bringing a cause of action for negligence against the association solely because of the individual's membership in the association. We agree.

## II.

██ An unincorporated association is a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective.[3] *Black's Law Dict.* 1531–32 (6th ed. 1990). Historically, unincorporated associations were not considered separate legal entities and had no existence apart from their individual members. *See Tunstall v. Wormley,* 54 Tex. 476, 481 (1881) (since church was not organized under the corporation act, "it was incapable, as a corporation, of suing or being sued, or of holding real estate; that it had no corporate name or existence ...."); *Burton v. Grand Rapids School Furniture Co.,* 10 Tex.Civ.App. 270, 31 S.W. 91, 92 (1895, no writ) ("An unincorporated association is no person, and has not the power to sue or to be sued."); *Home Benefit Ass'n No. 3 of Coleman County v. Wester,* 146 S.W. 1022, 1023 (Tex.Civ.App.—Austin 1912, no writ) ("[A]n unincorporated voluntary association, organized for charitable and not for business purposes, can neither sue nor be sued in its capacity as an association."). Because of the lack of a separate legal status, it was generally considered that unincorporated associations could only hold property through the intervention of trustees. *See, e.g., O.K.C. Corp. v. Allen,* 574 S.W.2d 809, 812 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.); *Parrish v. Looney,* 194 S.W.2d 419 (Tex.Civ.App.—Galveston 1946, no writ). For the same reason, a judgment

---

1. In this case, it is undisputed that Evergreen was an unincorporated association. Thus, an issue regarding what constitutes an unincorporated association is not before the court. Our use of the term "unincorporated charitable association" in this cause is not limited to a "benevolent" or "philanthropic" organization. We use the term to refer generally to unincorporated associations including but not limited to those associations organized and operated for charitable, religious, recreational, or educational purposes, as well as any other bona fide nonprofit association organized and operated for the promotion of social welfare by being primarily engaged in promoting the common good and the general welfare of the people in a community. However, the term "unincorporated charitable association" does not apply generally to unincorporated associations organized or conducted for business or profit.

2. The program was operated by Evergreen in the church educational building. Although the building itself was owned by the United Methodist Church, Evergreen appears to have been in exclusive control of the premises and Cox asserts her claim only against Evergreen.

3. Unincorporated associations long have been a problem for the law. They are analogous to partnerships, and yet not partnerships; analogous to corporations, and yet not corporations; analogous to joint tenancies, and yet not joint tenancies; analogous to mutual agencies, and yet not mutual agencies. *See* H. Oleck, *Nonprofit Corporations, Organizations, and Associations,* § 320 (4th ed. 1980). An early treatise on the subject noted that the number of unincorporated associations in Texas had multiplied unduly and that because of the "unsavory character" of many, the "lower courts of that state have divided in opinion, while awaiting a clear-cut expression from their highest court." *See* S. Wrightington, *Unincorporated Associations and Business Trusts,* (2d ed. 1923) (discussion in preface to second edition).

could not be rendered against such an association. *See Methodist Episcopal Church South v. Clifton,* 34 Tex.Civ.App. 248, 78 S.W. 732, 734 (1904, writ ref'd).

Consequent to the lack of legal identity, special rules arose concerning liability in actions involving unincorporated associations. In regard to contracts, members incurring the debt on behalf of the association or assenting to its creation were personally liable. *See Abrams v. Brent,* 362 S.W.2d 155, 159 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.); *Summerhill v. Wilkes,* 63 Tex.Civ.App. 456, 133 S.W. 492, 493 (1910, no writ). In regard to tort actions, member liability depended upon such factors as the nature of the association and the individual member's involvement in the conduct giving rise to the cause of action. *See Golden v. Wilder,* 4 S.W.2d 140, 143–44 (Tex.Civ.App.—Fort Worth 1928, no writ). *See generally* 6 Am.Jur.2d *Associations and Clubs* § 48 (1963); Annotation, *Liability of Member of Unincorporated Association for Tortious Acts of Association's Nonmember Agent or Employee,* 62 A.L.R.3d 1165 (1975).

The rule of law also developed that an unincorporated association was not liable to one of its members for damages occasioned by the wrongful act of another member or agent of the association. *United Ass'n of Journeymen and Apprentices v. Borden,* 160 Tex. 203, 207, 328 S.W.2d 739, 741 (1959). *See also Anderson v. Painters Local Union,* 161 Tex. 129, 134, 338 S.W.2d 148, 152 (1960). Such immunity was grounded on the concept that the injured member and the association were regarded as coprincipals, with the tortfeasor as their common agent. The wrongful conduct was thus "imputed" to the plaintiff for purposes of his action against the association. *Id.* In effect, it was considered that the

plaintiff was suing himself. *See Brotherhood of Railroad Trainmen v. Allen,* 230 S.W.2d 325, 327 (Tex.Civ.App.—Waco 1950, writ ref'd), *cert. denied,* 340 U.S. 934, 71 S.Ct. 501, 95 L.Ed. 674 (1951); *Atkinson v. Thompson,* 311 S.W.2d 250, 254 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.) ("[A]s a member of the Brotherhood he is jointly responsible with all other members for the actions of the group itself, and accordingly as a principal he has no cause of action against co-principals for the wrongful conduct of a common agent."). It is this rule of law that Evergreen contends precludes Cox's claim.

### III.

■ Cox advances three arguments for allowing her to maintain a cause of action. First, Cox argues that the common law principles have been modified by a series of statutes concerning suits by and against unincorporated joint stock companies and associations. *See* Tex.Rev.Civ.Stat.Ann. arts. 6133–6138 (Vernon 1970) (entitled "Unincorporated Joint Stock Companies"). Article 6133 provides:

> Any unincorporated joint stock company or association, whether foreign or domestic, doing business in this State, may sue or be sued in any court of this State having jurisdiction of the subject matter in its company or distinguishing name; and it shall not be necessary to make the individual stockholders or members thereof parties to the suit.

*Id.* at art. 6133. Articles 6134–6138 provide a method of citation and establish rules regarding liability of association members for adverse judgments. *Id.* at arts. 6134–6138.[4]

We must determine whether articles 6133–6138 are applicable to unincorporated

---

4. The courts of appeal reach diverging conclusions regarding whether articles 6133–6138 clothe all unincorporated associations with separate legal existence. Some have held that under these articles, unincorporated associations constitute separate legal entities. *See Jones v. Maples,* 184 S.W.2d 844, 847 (Tex.Civ.App.—Eastland 1944, writ ref'd); *Mood v. Methodist Episcopal Church South,* 289 S.W. 461, 464 (Tex. Civ.App.—Eastland 1926), *aff'd,* 296 S.W. 506

(Tex.Comm'n App.1927, holding approved); *Brotherhood of Railroad Trainmen v. Cook,* 221 S.W. 1049, 1051 (Tex.Civ.App.—Amarillo 1920, writ ref'd). Others, however, do not conclude that the statute has such an effect. *See, e.g., Mayhew & Isbell Lumber Co. v. Valley Wells Truck Growers' Ass'n,* 216 S.W. 225 (Tex.Civ. App—San Antonio 1919, no writ). We disapprove any language in these cases contrary to this opinion.

charitable associations. In *Realty Trust Co. v. First Baptist Church of Haskell,* 46 S.W.2d 1009 (Tex.Civ.App.—Eastland 1932, no writ), the court held: "[I]t is our opinion that the article has no application to an unincorporated religious society. It is not a joint stock company or association doing business in this state." *Id.* at 1010. *See also Gribble v. Call,* 123 S.W.2d 711, 715 (Tex.Civ.App.—Eastland 1938, writ dism'd judgmt cor.) (restating *Realty Trust* holding that article 6133 only applies to those unincorporated associations "doing business in this state"); *San Antonio Fire Fighters' Local Union v. Bell,* 223 S.W. 506, 508 (Tex.Civ.App.—San Antonio 1920, writ ref'd) (language of statute implies intent to confine application to matters of business). *See also Minton v. Leavell,* 297 S.W. 615, 622 (Tex.Civ.App.—Galveston 1927, writ ref'd). We find these cases persuasive, and conclude that articles 6133–6138 do not apply to unincorporated charitable associations.

■ Cox next looks to rule 28 of the Texas Rules of Civil Procedure.[5] Rule 28 has been interpreted as treating unincorporated associations as legal entities, at least to the extent of obtaining and enforcing judgments against them. *See, e.g., Darrett v. Church of God In Christ No. 1,* 381 S.W.2d 720, 722 (Tex.Civ.App.—Texarkana 1964, writ ref'd n.r.e.) (stating that rule 28 appears broad enough to give an unincorporated religious association a "procedural right to bring an action in its common name to enforce a substantive right"); *Post No. 581, American Legion, Dep't of Texas v. Department of Texas, American Legion,* 290 S.W.2d 712, 715 (Tex.Civ.App.—Fort Worth 1956, no writ). The court of appeals correctly recognized the effect of this rule when it held: "Pursuant to rule 28, members of an unincorporated religious association may be sued or prosecute their claims, as to third parties, under the association's assumed name as a legal entity." 804 S.W.2d at 191. There can be no doubt that, at least to the extent of obtaining and enforcing judgments against them, rule 28 treats unincorporated associations as legal entities. This conclusion, however, does not complete our inquiry. Rule 28 generally does not affect substantive rights. *See* Tex.R.Civ.P. 815. As previously discussed, under the substantive law as it presently exists, Cox is precluded from asserting her claim. For this reason, rule 28 alone is not determinative.

■ Lastly, Cox argues that the common law principle precluding her from bringing a negligence action solely because of her membership in the association should be abolished. We agree.[6]

As discussed above, an unincorporated association was historically not liable to one of its members for damages occasioned by the wrongful act of another member or agent of the association. *See Borden,* 328 S.W.2d at 741. This court, however, has recognized various situations in which membership alone is an insufficient reason to preclude a member of an unincorporated association from asserting a cause of action against the association. In *Borden,* we held that the wrongful act of an unincorporated association will not be imputed to the injured member when the act is committed in the course of an undertaking strictly adverse to the member's interests. *Borden,* 328 S.W.2d at 742. Noting that the rights and liabilities of the parties depend upon the relationship existing at the time the wrongful act is committed, we

5. Rule 28 provides, in pertinent part: "Any ... unincorporated association ... may sue or be sued in its ... common name for the purpose of enforcing for or against it a substantive right...." Tex.R.Civ.P. 28.

6. Because we are not directed by legislative enactment, the common law controls. *See Lindner v. Hill,* 673 S.W.2d 611, 616 (Tex.App.—San Antonio 1984), *aff'd,* 691 S.W.2d 590 (Tex.1985). In appropriate limited circumstances, this court has recognized the need to modify the common law. *See Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983) (discussing cases in which "antiquated doctrines" have been abolished in "response to the needs of a modern society"). Additionally, since our resolution of this question depends upon rights and liabilities existing under the common law, an area that is our special domain, the result we reach today is not a usurpation of the legislative prerogative. *See Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex. 1983).

based our holding on the agency rule that a principal is not liable for the torts committed by an agent acting adversely to him. *Id.* We also stated in *Borden* that the wrongful act will not be imputed when the association conspires to bring about or ratifies the wrongful conduct. *Id.* at 744-45. We did not, however, go so far as to say that liability would not be imputed when the injury was the result of the association's negligence. *Id.* at 742, 745.

Since *Borden*, this court has refused to apply the "imputed negligence doctrine" in other contexts, including situations involving ordinary negligence. In *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10 (Tex. 1974), a passenger co-owner was killed in the crash of a small plane, piloted by another co-owner, engaged in a voluntary Civil Air Patrol search mission. *Id.* at 12. We rejected the joint enterprise doctrine and refused to impute the negligence of the pilot co-owner to the passenger co-owner when at the time of the crash the co-owners did not have a business or pecuniary purpose. *Id.* at 16-17. We noted "there is not the same reason for imposing liability in the non-commercial situations which are more often matters of friendly or family cooperation and accommodation." *Id.* at 17. We also stated that "[b]y limiting the application of the doctrine to an enterprise having a business or pecuniary purpose, we will henceforth be avoiding the imposition of a basically commercial concept upon relationships not having this characteristic."

*Id.* *See also Rollins Leasing Corp v. Barkley*, 531 S.W.2d 603, 605 (Tex.1975) (bailee's contributory negligence not automatically imputed to bailor).[7]

Guidance is also found in *Dutcher v. Owens*, 647 S.W.2d 948 (Tex.1983), a case in which a question arose regarding the allocation of liability among co-owners of a condominium complex for tort claims involving the common areas of the complex. *Id.* at 950. In disposing of a common law rule making co-owners wholly liable for any injury, we stated:

> [T]o rule that a condominium co-owner had any effective control over the operation of common areas would be to sacrifice "reality to theoretical formalism," for in fact a co-owner has no more control over operations than he would have as a stockholder in a corporation which owned and operated the project.

*Id.*

Finally, numerous other jurisdictions have recently considered whether the negligence of an unincorporated association, charitable or otherwise, should be imputed to an injured member so as to preclude a cause of action by the member against the association. Although some states continue to find themselves bound by the original common law rule,[8] others have recognized the arbitrary result to which it leads and have abrogated its application.[9] *See Buteas v. Raritan Lodge*, 248 N.J.Super. 351, 591 A.2d 623, 628 (1991) ("[T]he imputed

---

7. In their treatise, Prosser & Keeton discuss the doctrine as follows:

   > "Imputed contributory negligence" has a very bad name of its own, because of a group of quite unreasonable and rather senseless rules which were at one time applied to defeat the recovery of the injured plaintiff by imputing to him the negligence of another, even though he would not have been at all liable for that negligence as a defendant.... Except for vestigial remnants which are at most mortibound historical survivals, "imputed contributory negligence" in its own right has now disappeared.

   W. Prosser & P. Keeton, *The Law of Torts*, § 74, at 529-30 (5th ed. 1984).

8. *See Foster v. Purdue University Chapter, The Beta Mu of Beta Theta Pi*, 567 N.E.2d 865, 870 (Ind.Ct.App.1991) (fraternity pledge rendered quadriplegic after using a waterslide had no cause of action pursuant to "general rule"); *Zehner v. Wilkinson Memorial United Methodist Church*, 399 Pa.Super. 165, 581 A.2d 1388, 1389 (1990), *appeal denied*, 527 Pa. 637, 592 A.2d 1304 (1991) (stating rule); *Calvary Baptist Church v. Joseph*, 522 N.E.2d 371 (Ind.1988) (recognizing that some exceptions should exist to avoid sacrificing reality to theoretical formalism, but refusing to create exception for church); *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 708 (Wyo.1987) (actor involved in mock gunfight had no action against club or members for negligence of club).

9. States having abrogated the doctrine have generally premised their holdings on explicit statutory schemes recognizing unincorporated associations as separate legal entities. However, the policy reasons they articulate are no less compelling when no such statute is applicable.

negligence doctrine barring suit by a member against the association itself is based on an obsolete legal fiction whose time has long since passed."); *Crocker v. Barr,* 409 S.E.2d 368, 372 (S.C.1991) ("We hold that ... an unincorporated association, regardless of its underlying purpose, is amenable to suit by its members for tortious acts."); *Furek v. University of Delaware,* 594 A.2d 506, 513 (Del.1991) (suit by fraternity pledge brought under statute allowing suits against unincorporated associations and allowing judgment against association property); *Tanner v. Columbus Lodge No. 11,* 44 Ohio St.2d 49, 337 N.E.2d 625, 627 (1975) ("[A] member of an unincorporated association may maintain an action against the association for personal injuries resulting from the negligent acts of its agents...."); *White v. Cox,* 17 Cal.App.3d 824, 95 Cal.Rptr. 259, 261 (1971) ("[W]e conclude that unincorporated associations are now entitled to general recognition as separate legal entities and that as a consequence a member of an unincorporated association may maintain a tort action against his association."). *See also* Annotation, *Recovery by Member from Unincorporated Association for Injuries Inflicted by Tort of Fellow Member,* 14 A.L.R.2d 473 (1950).

## IV.

▮▮▮ So what remains of the early common law rules regarding unincorporated associations and the imputed negligence doctrine? Apparently, very little. We allow suits by and against unincorporated associations in their own name. *See* Tex. R.Civ.P. 28. We allow nonmembers to bring suits, including those for negligence, against unincorporated associations. *See Golden,* 4 S.W.2d at 143–44. We allow members to sue unincorporated associations for acts committed that are strictly adverse to the member's interests. *See Borden,* 328 S.W.2d at 742. We allow members to sue unincorporated associations when the association conspires to bring about or ratifies the wrongful conduct. *See Id.* at 744–45. We refuse to apply the imputed negligence doctrine in the analogous joint enterprise context when there is no business or pecuniary purpose. *See Shoemaker,* 513 S.W.2d at 16–17. And lastly, a number of states allow suits against unincorporated associations by their members for injuries resulting from the association's negligence. *See, e.g., Buteas,* 591 A.2d at 628. Nevertheless, one vestige of the common law survives—our obedience to an ancient precept automatically imputing the negligence of an unincorporated association to an injured member. Considering the development of the law in regard to our treatment of unincorporated associations, *see* Tex.R.Civ.P. 28, *Borden,* 328 S.W.2d at 742, combined with our refusal to apply the imputed negligence doctrine in other contexts, *see, e.g., Shoemaker,* 513 S.W.2d at 16–17, we perceive no compelling reason for retaining this remnant of the original common law rules. In this regard, we share the concerns expressed by the South Carolina Supreme Court when it stated:

> Why should a church member be precluded from suing an association in tort when a paid workman would be allowed to maintain an action for the very same injury?

*Crocker,* 409 S.E.2d at 371. We also are unable to discern a defensible reply to this query. Consequently, we hold that a member of an unincorporated charitable association is not precluded from bringing a negligence action against the association solely because of the individual's membership in the association. Any assets of the unincorporated charitable association, held either by the association or in trust by a member of the association, may be reached in satisfaction of a judgment against the association.[10]

---

10. Cox asserts her claim only against Evergreen and not against the individual members of the church. Consequently, we need not address the issue of member liability. We also note that Cox's injuries occurred in 1986. Thus, the Charitable Immunity and Liability Act of 1987 does not apply. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 84.001–.008 (Vernon Supp.1992). In cases, however, in which the Act is applicable, charitable organizations, as specifically defined by the Act, can effectively insulate themselves from liability by maintaining the statutorily required

For these reasons, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

Concurring opinion by COOK, J., joined by HECHT, J.

Dissenting opinion by GONZALEZ, J.

COOK, Justice, concurring.

I join in the court's opinion. However, I write separately to express my concern regarding the effect of the opinion on the liability of individual members. Before today, the scope of liability of a member of an unincorporated association by virtue of membership in that association was at best unclear. Today's opinion clarifies some aspects of a member's liability. However, because many key questions are not before this Court, the opinion could be misinterpreted and produce unintended consequences. One of these consequences could be an expansion of the liability of members.

Typically there will be much more frequent interaction between the members of an unincorporated association than between a member and non-members. Therefore, by abolishing imputed negligence and creating liability between members the liability of individual members could be increased. However, the court's opinion should not be read to produce that result in every situation.

The same rule that prevents imputation of negligence to a member to bar suit should also prevent imputation of negligence to a member for purposes of individual liability. The implicit holding of today's opinion is that the individual liability of a member will be based on their actual participation in the tort or ratification of the actions which cause injury. Accordingly, I do not believe that an injured member should be able to recover for their injuries from another member who did not participate in or ratify the conduct leading to the member's injury. *See Dutcher v. Owens,* 647 S.W.2d 948 (Tex.1983) (due to lack of real control, liability of member of unincorporated condominium owners association

for injury to non-member due to association's negligence limited to owner's pro-rata ownership share); *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry v. Borden,* 160 Tex. 203, 328 S.W.2d 739, 744 (1959) (compares unincorporated associations to ordinary principal; liability requires collusion, active participation, authorization, or ratification); *see also Libby v. Perry,* 311 A.2d 527, 534 (Me.1973) (member not liable unless actively participates in negligence; adopts a very broad definition of active participation); *Thomas v. Dunne,* 131 Colo. 20, 279 P.2d 427, 432 (1955 en banc) (members of unincorporated association are not liable absent active participation in the negligent act); *Guyton v. Howard,* 525 So.2d 948, 956 (Fla.App.1988) ("The individual members of an unincorporated association are personally liable for tortious acts which they individually commit or participate in, or which they authorize, assent to or ratify."). The injured member must look to those members who were actively negligent; those who authorized, assented to, or ratified the negligent act; or the unincorporated association itself.

Finally, although the court has abrogated the doctrine of imputed contributory negligence in this context, Cox's own contributory negligence is still a consideration to the extent she actively participated in the negligence or authorized, assented to, or ratified the association's actions that caused her injuries.

HECHT, J., joins in this opinion.

GONZALEZ, Justice, dissenting.

Today, the Court refuses to follow well-settled Texas precedent choosing instead to abolish the common law rule that prohibits a member of an unincorporated association from bringing a cause of action for negligence against the association. In trying to help Ms. Cox, the Court greatly expands the potential personal liability for the hundreds of thousands of volunteers across this state that selflessly give of their time

---

levels of insurance. *Id.* Of course, protection is    also afforded by the simple act of incorporation.

in activities such as youth soccer leagues and little league baseball. The Court renders this unfortunate result by declaring dead the doctrine of imputed negligence. The task of modifying the liability of an unincorporated association to its members for negligence should be left to the legislature. Thus, I dissent.[1]

## I.

Thee Evergreen Church is an independent, non-denominational church in Coldspring, Texas. At the time of the accident, Ms. Cox had belonged to the church for four years and was a member of its administrative board. In her application to this Court, Ms. Cox alleged that the Church was responsible for ensuring that the entrance-way of the day-care center was safely maintained. While dropping her son off at the church, she slipped and fell on this entrance-way which had become slick from rain. As a member of the administrative board, Ms. Cox herself may have been responsible for ensuring such entrance-way maintenance.

## II.

A majority of jurisdictions follow the rule that a "member of an unincorporated association injured due to the tortious conduct of another member cannot sue the association." [2] *See Calvary Baptist Church v. Joseph*, 522 N.E.2d 371, 373 (Ind.1988); *see also Zehner v. Wilkinson Memorial United Methodist Church*, 399 Pa.Super. 165, 581 A.2d 1388 (1990). *See, e.g., Goins v. Missouri Pac. Sys. Fed.*, 272 F.2d 458 (8th Cir.1959); *Gilbert v. Crystal Fountain Lodge*, 80 Ga. 284, 4 S.E. 905 (1887); *Employer's Mutual Casualty Co. v. Griffin*, 46 N.C.App. 826, 266 S.E.2d 18 (1980); *Walsh v. Israel Couture Post, N. 2274*, 542 A.2d 1094 (R.I.1988); *Duplis v. Rutland Aerie, No. 1001, Fraternal Order of Eagles*, 118 Vt. 438, 111 A.2d 727 (1955); *Carr v. Northern Pacific Benef. Assoc.*, 128 Wash. 40, 221 P. 979 (1924); *Fray v. Amalgamated Meat Cutters*, 9 Wis.2d 631, 101 N.W.2d 782 (1960); *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704 (Wyo.1987).

In *Calvary Baptist Church v. Joseph*, a church member was injured when he fell from a ladder while repairing the church's roof. 522 N.E.2d at 372. The Supreme Court of Indiana, reversing the court of appeals' judgment, held that the church

**1.** I agree with Justice Cook's observations in his concurrence that the personal liability of an association's member should be limited to tortious acts which the member participated in or ratified.

In 1987, the Texas legislature passed the Charitable Immunity and Liability Act. *See* TEX.CIV. PRAC. & REM.CODE ch. 84 (the Act has no substantive bearing on this case because it post-dates the cause of action). In section 84.002, titled "Findings and Purposes," the legislature found that:

(1) robust, active, bona fide, and well-supported charitable organizations are needed within Texas to perform essential and needed services;

(2) the willingness of volunteers to offer their services to these organizations is deterred by the perception of personal liability arising out of the services rendered to these organizations;

(3) because of concerns over personal liability, volunteers are withdrawing from services in all capacities;

(4) the same organizations have a further problem in obtaining and affording liability insurance for the organization and its employees and volunteers;

(5) these problems combine to diminish the services being provided to Texas and local communities because of higher costs and fewer programs;

(6) the citizens of this state have an overriding interest in the continued and increased delivery of these services that must be balanced with other policy considerations; and

(7) because of the above conditions and policy considerations, it is the purpose of this Act to reduce the liability exposure and insurance costs of these organizations and their employees and volunteers in order to encourage volunteer services and maximize the resources devoted to delivering these services.

The Court's decision is at cross-purposes with the irrefutably clear legislative intent revealed in the Charitable Immunity Act. That is, the Court is now expanding the liability of charitable organizations despite the legislature's express will to limit that liability.

**2.** By citing only three of the many jurisdictions that continue to abide by the non-liability rule, and then citing five that have abandoned it, the Court may have wrongly implied that the rule exempting unincorporated associations from liability is a waning doctrine. In fact, most jurisdictions still adhere to it.

was not liable for the member's injury. *Id.* at 374. The court explained the non-liability rule for unincorporated associations as follows:

> The theory of the general rule is that the members of an unincorporated association are engaged in a joint enterprise. The negligence of each member in the prosecution of that enterprise is imputable to each and every other member so that the member who has suffered damages through the tortious conduct of another member of the association may not recover from the association for such damage. It would be akin to the person suing himself as each member becomes both a principal and an agent to all other members for the actions of the group itself.

*Id.* at 374–75. In order to "avoid sacrificing reality to theoretical formalism," the court excepted very large associations from the non-liability rule because they possess a separate identity from their members and the individual members have limited influence over the organization's operations. *Id.* at 375; *see also Marshall v. International Longshoremen's and Warehousemen's Union,* 57 Cal.2d 781, 22 Cal.Rptr. 211, 214, 371 P.2d 987, 990 (1962).[3]

In *Zehner v. Wilkinson Memorial United Methodist Church,* another case involving a church's liability to a member for negligence, a woman was injured when she slipped and fell on the church's steps while leaving after Christmas services. 581 A.2d at 1388. She sued the church alleging negligence for, among other things, failure to adequately light the steps. *Id.* The trial court granted summary judgment for the church and the court of appeals affirmed, noting that "any negligence of her fellow members is imputed to her and she cannot recover in tort." *Id.* at 1389. The *Zehner* court found it significant that the injured member was on the committee which dis-

cussed the safety of the steps and decided not to act prior to her accident.

## III.

This Court approved the general rule regarding the non-liability of unincorporated associations for negligence in *United Ass'n of Journeymen and Apprentices v. Borden,* 160 Tex. 203, 328 S.W.2d 739 (1959). While holding that a union member could sue his unincorporated union for its agent's willful and malicious acts, the Court noted that the plaintiff would not have recovered if the agent had been merely negligent. *Id.* 328 S.W.2d at 744. The Court now overturns the majority rule expressed in *Borden* in favor of a broad liability standard for unincorporated associations.

The Court seeks authority for its action by relying on *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10 (Tex.1974), *Rollins Leasing Corp. v. Barkley,* 531 S.W.2d 603 (Tex.1975), and *Dutcher v. Owens,* 647 S.W.2d 948 (Tex.1983). None of these cases supports the Court's abrogation of the imputed negligence doctrine for unincorporated associations. In *Shoemaker,* the Court focused on modifying the joint enterprise doctrine. 513 S.W.2d at 17. That case involved a plane which crashed while engaged in a Civil Air Patrol reconnoiter in foul weather, killing the pilot and three passengers. *Id.* at 12. The estate of one of the passengers sued the pilot's estate alleging negligence for choosing to fly in the severely inclement weather which ultimately caused the crash. *Id.* The issue was whether the Civil Air Patrol members engaged in a joint enterprise in choosing to go aloft in the airplane, and thus whether the court properly should have imputed contributory negligence to the plaintiff. *Id.* at 13.

The Court noted that the traditional elements of a joint enterprise in Texas only required proof of a joint interest in the

---

**3.** Rather than abandoning the non-liability rule, the Court could have used a test similar to the one announced by the California Supreme Court in *Marshall v. International Longshoremen's and Warehousemen's Union,* 57 Cal.2d 781, 22 Cal.Rptr. 211, 371 P.2d 987, 990 (1962), which determines whether liability can accrue against an unincorporated association by asking: (1) whether the association possesses a separate legal existence from its members; and (2) whether the members retain direct control over the operations of the association. *Cf. Dutcher v. Owens,* 647 S.W.2d 948 (Tex.1983).

venture's purpose and an equal right to direct or control the conveyance used to accomplish the venture. *Id.* at 14. If a joint enterprise is proven, the Court observed, then negligence is imputed among tortfeasors participating in the enterprise. The Court recognized that the joint enterprise doctrine would compel the imputation of the pilot's negligence to the deceased passenger. *Id.* at 16. The Court avoided this result by substantially revising the joint enterprise doctrine, limiting it exclusively to business or commercial contexts and thus obviating the imputed negligence issue. *Id.* at 17. This explanation clarifies why the *Shoemaker* Court included Dean Prosser's negative comment regarding imputed contributory negligence. That is, the quote helped justify, particularly given *Shoemaker's* factual context, a dramatic narrowing of the joint enterprise doctrine, which concomitantly narrowed the scope of the imputed negligence doctrine.

Likewise, *Rollins Leasing Corp. v. Barkley* does not help the Court's argument. 531 S.W.2d at 604. *Rollins* involved a bailment and had nothing to do with unincorporated associations. Imputing a bailee's contributory negligence to a bailor stemmed from an archaic bailment doctrine which analogized the bailor/bailee relationship to that of a principal and agent. *Id.* When we decided *Rollins* in 1975, we were the last jurisdiction to abandon the outdated bailment/agency analogy and with it went the doctrine of imputed contributory negligence between a bailor and a bailee. The Court's strong criticism of the doctrine was confined exclusively to the context of bailments and thus has no bearing on the apportionment of liability in tort actions involving unincorporated associations.[4]

*Dutcher v. Owens* also is inapposite to the Court's result. That case turned entirely upon an extended construction of the Texas Condominium Act to determine the liability among condominium co-owners for a fire caused by a faulty light fixture in the common area. *Dutcher*, 647 S.W.2d at 949. Relying on several provisions of the Act, which divide costs and expenses among the co-owners on a *pro rata* basis, the Court held that tort liability likewise should be divided on a *pro rata* basis. *Id.* at 951. The holding in *Dutcher* was fundamentally shaped by a statutory scheme; thus, the case simply does not involve the merit of the imputed contributory negligence doctrine regarding unincorporated associations.

The Court has abrogated the non-liability rule for unincorporated associations for negligence actions brought by members based on the Court's conclusion that imputed negligence is by its very nature an outmoded doctrine. The accuracy of this conclusion, about which our sister jurisdictions are split, should not have persuaded this Court to engage in ill advised judicial activism.

## IV.

The cases from our sister jurisdictions, upon which the majority relies to support its abrogation of the imputed negligence doctrine, are clearly distinguishable from the case before us, and they do not support the Court's approach nor its conclusion. In most of the cited cases, the court derived its authority to act entirely from legislation which limited or abolished the imputed negligence doctrine.[5]

In *Buteas v. Raritan Lodge*, 248 N.J.Super. 351, 591 A.2d 623, 624 (1991), the court stated that "[w]e hold that N.J.S.A. 2A:64–1 to –6 modifies the common-law doctrine of imputed negligence among joint enterprisers, thus enabling a member of a voluntary association *encompassed by that legislation* to seek a tort recovery from the association...." (emphasis added). And in

---

**4.** Since a majority of jurisdictions still apply the non-liability rule for unincorporated associations, it is axiomatic that abrogating imputed contributory negligence for bailments does not render it useless in other contexts.

**5.** As the Court notes, the Texas Legislature has refused to expand the non-liability rule contained in article 6133, which says that an "unincorporated joint stock company or association, whether foreign or domestic, doing business in this State, may sue or be sued...." at 171 (citing Tex.Rev.Civ.Stat. art. 6133 (1907)).

*Crocker v. Barr*, 409 S.E.2d 368, 371 (S.C. 1991), the South Carolina Supreme Court relied on S.C.Code §§ 33–55–200 *et seq.* to abolish the doctrine. Section 33–55–210 of the statute provided that when a tort is committed by a church employee and that employee is acting within the scope of his employment, an injured party "may only recover in any action brought against the charitable organization in an amount not exceeding two hundred thousand dollars." The *Crocker* court found that the association being sued was within the statutory definition of "charitable organization" and that the statute "clearly contemplat[ed] . . . liability actions against unincorporated associations, including churches." *Id.*

In *Tanner v. Columbus Lodge No. 11*, 44 Ohio St.2d 49, 337 N.E.2d 625, 626 (1975), the Ohio Supreme Court reexamined the general rule "in light of pronouncements of this court *and legislative enactments*. . . ." (emphasis added). The court held that, by enacting the statutes, the legislature established associations as separate legal entities. *Id.* The court found that the statutes applied to all unincorporated associations because they refer to "*any* unincorporated association." *Id.* 337 N.E.2d at 627. (emphasis added). The *Tanner* court concluded by stating that "[u]nder the provisions of R.C. Chapter 1745, a member of an unincorporated association may maintain an action against the association for personal injuries resulting from the negligent acts of its agents, committed while within the scope of their authority." *Id.*

These three cases, upon which the Court relies, are clearly distinguishable from the case at bar, because the holdings were based on statutory changes enacted by the respective state legislatures. In the instant case, the majority concedes that the potentially relevant Texas statutes do not apply to non-commercial unincorporated associations. At 171. Thus, reliance on these cases is misplaced.

The majority also cites *White v. Cox*, 17 Cal.App.3d 824, 95 Cal.Rptr. 259 (1971), for support, but it does not apply because it deals with condominium projects. The

*White* court reaffirmed a two prong analysis "to determine the tort liability of an association to its members. . . ." *Id.* 95 Cal.Rptr. at 262–63. *See Marshall v. International Longshoremen's and Warehousemen's Union*, 57 Cal.2d 781, 22 Cal. Rptr. 211, 214, 371 P.2d 987, 990 (Cal.1962) (see footnote two, *supra*). The court concluded that, like labor unions, the liability of condominium associations depends on "the nature of the condominium and its employment of the concept of separateness" and the level of control exerted by the unit's owner over the association's management. *White*, 95 Cal.Rptr. at 262. It is clear that the church involved in this case would not satisfy the elements of the *Marshall* test upon which the *White* decision turned.

Finally, the majority cites *Furek v. University of Delaware*, 594 A.2d 506 (Del. 1991), to support its position that an unincorporated association is liable to its members for the negligence of other members. In *Furek*, a student was injured during fraternity hazing activities. Furek sued the local fraternity, the national affiliate of the local fraternity, the University of Delaware, and a fellow student. *Id.* at 509. The trial court dismissed the local fraternity on jurisdictional grounds, because Furek failed to make effective service of process on the association. *Id.* at 512–14. Despite what the majority suggests, *Furek* does not hold that an unincorporated association is liable for the tortious activity of its members. *Furek* merely interpreted a state statute regarding the proper service of partnerships and associations to hold that the trial court was correct in dismissing the local fraternity from the suit. *Id.* at 513.

## V.

Because of its displeasure with the imputed negligence doctrine, the Court has decided that the majority rule regarding the non-liability of unincorporated associations shall no longer apply in Texas. To reach its result, the Court simply overturns the controlling precedent; yet the Court fails to provide any persuasive authority to justify its action. The Court merely agrees

with Ms. Cox's contention that the non-liability rule must go and then lays out a string of cases that ostensibly support its complete rejection of the imputed negligence doctrine. As our foregoing analysis of the cited authority demonstrates, the caselaw relied on by the Court does not adequately support its position. The Court's decision ultimately rests on its determination that the proper public policy approach would allow church members to sue the church. I believe, however, that the imputed negligence doctrine appropriately applies in such situations, because church members are the collective co-owners of the church's property. Ms. Cox was a "co-owner" of Thee Evergreen Church's property. By suing the church for a slip and fall she suffered while on the church's premises, she was in fact suing herself. The imputed negligence doctrine has obviated, until now, such legal conundrums. *Cf.* TEX.CIV.PRAC. & REM.CODE § 84.002(7) (legislature wants to "reduce the liability exposure" of charitable organizations like churches).

Every Texas church that is formed as an unincorporated association is now subject to being sued by one of its members for any alleged negligence that the members may commit. The unfortunate but unavoidable result of today's decision is that some churches across this state will discontinue a wide range of beneficial services currently rendered for their members' benefit, frequently free of charge, so as to limit their liability. This is but one of the many disruptive and deleterious effects that today's result may inflict upon Texas' volunteer community, all of which the Court apparently ignored in its zeal to abolish the imputed negligence doctrine. *Cf.* TEX.CIV.PRAC. & REM.CODE § 84.002(3) (legislature recognized that "because of concerns over personal liability, volunteers are withdrawing from services in all capacities").

A court should not abandon a doctrine developed at common law merely because it bars one avenue of relief to a sympathetic plaintiff. Before abrogating an existing common law doctrine, the court must analyze the policies the doctrine was designed to serve, determine whether reasons for the doctrine remain valid, and weigh the costs versus the benefits of disregarding the doctrine. The Court failed to do this here. Accordingly, for the above reasons, I dissent.