**FRIENDS OF THE EARTH, INC., Plaintiff,**

v.

**CHEVRON CHEMICAL COMPANY, Defendant.**

Nos. 1:94–CV–434, 1:94–CV–580.

United States District Court, E.D. Texas, Beaumont Division.

March 21, 1996.

Bruce J. Terris, Carolyn Smith Pravlik, Linda C. Schneider, J. Martin Wagner of Terris, Pravlik & Wagner, Washington DC, for Plaintiff.

James E. Smith, John E. Carlson of Beirne, Maynard & Parsons, LLP, Houston,

TX, Michael B. Smith, Chevron Chemical Co. Houston, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

SCHELL, Chief Judge.

This matter is before the court following a three day trial to the bench. Following the close of the evidence, the court requested the submission of written closing argument. Based on a review of the evidence, various trial briefs filed by the parties, applicable case law, and the parties' closing arguments, the court is of the opinion that Plaintiff Friends of the Earth, Inc. lacks constitutional standing to bring this action. As a result, there is no justiciable controversy before the court. Accordingly, this action is hereby DISMISSED for lack of subject matter jurisdiction.

### RELEVANT BACKGROUND

Plaintiff Friends of the Earth, Inc. ("FOE") is a non-profit corporation organized under the laws of the District of Columbia to promote a broad agenda of environmental awareness and improvement projects.[1] Defendant Chevron Chemical Company ("Chevron") manufactures chemical products for various commercial and industrial uses. Chevron manufactures polyethylene at its facility in Orange, Texas ("the Orange facility"). Chevron operates the Orange facility under the National Pollutant Discharge Elimination System ("NPDES") permit number TX0004839 that was issued by the Environmental Protection Agency ("EPA").

On July 18, 1994, FOE filed a private civil enforcement action against Chevron pursuant to section 505 of the Clean Water Act.[2] FOE asserts that it has constitutional standing to pursue this action itself and as a representative of its members who allegedly have been harmed by Chevron's conduct. In this suit, FOE alleges that Chevron violated its NPDES permit for the Orange facility. On September 29, 1994, FOE filed a second suit against Chevron alleging additional permit violations. The court consolidated these actions on December 20, 1994. Following considerable pretrial wrangling, this case was tried to the bench from January 17–19, 1996.

Before commencement of this trial, the court made rulings on various motions including Chevron's motion to dismiss and the parties' cross motions for summary judgment. In an opinion and order signed September 1, 1995, this court denied that part of Chevron's motion for summary judgment which asserted that FOE lacked constitutional standing. Based upon the information before the court at that time, the court concluded that FOE had constitutional standing to pursue this citizens' suit. Each party then filed motions for clarification of the September 1st opinion and order. After reconsideration, the court issued its October 20, 1995, order stating that fact issues on both constitutional standing and statutory standing remained for trial in this matter.

### CONSTITUTIONAL STANDING

The United States Court of Appeals for the Fifth Circuit recently outlined the principles of representational constitutional standing relevant to this case in *National Treasury Employees Union v. Department of the Treasury.*[3] According to *National Treasury,*

[t]he requirement of standing is designed to confine the federal courts to their proper—and properly limited—role in a democratic society. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold

---

1. *See* Bylaws of Friends of the Earth, Inc., art. I ("General") § 1 ("Purpose") (Pl.'s Tr.Ex. 93) ("FOE Bylaws").

2. 33 U.S.C. § 1251 et seq. The citizen suit provision referenced above as section 505 appears at 33 U.S.C. § 1365.

3. 25 F.3d 237 (5th Cir.1994).

question in every federal case, determining the power of the court to entertain the suit." *Warth,* 422 U.S. at 498, 95 S.Ct. at 2205. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758.[4]

■ With regard to representational standing of the sort alleged by FOE in this case, the court in *National Treasury* stated that

an association may have standing solely as the representative of its members, even in absence of injury to itself. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 342, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211; *National Motor Freight Traffic Association v. United States,* 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). "The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211–12 (citing *Sierra Club v. Morton,* 405 U.S. 727, 734–41, 92 S.Ct. 1361, 1365–69, 31 L.Ed.2d 636 (1972)). In addition, there are two other requirements for associational standing. As stated by *Hunt,* the test for representational standing requires that:

(1) the members of the association would have standing individually;

(2) the interests pursued through the litigation are germane to the association's purpose; and

(3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441.

The organization seeking to assert representational standing has the burden to prove the facts necessary to establish its standing in the matter.[5]

■ An environmental protection group does not possess standing to bring an environmental action merely because it exists for the protection of the environment. The United States Supreme Court has stated that "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III. Insofar as these organizations seek standing based on their special interest[s] [in the subject matter of litigation] their complaint[s] must fail."[6]

INSIDE FRIENDS OF THE EARTH, INC.

FOE is a nonprofit corporation incorporated under the laws of the District of Columbia.[7] According to the District of Columbia Nonprofit Corporation Act, a nonprofit corporation

may have 1 or more classes of members or may have no members. If the corporation has 1 or more classes of members, the designation of such class or classes, the manner of election or appointment and the qualifications and rights of the members of each class shall be set forth in the articles of incorporation or the bylaws.[8]

FOE's corporate bylaws state that "[t]he corporation shall have one class of members. The designation of members and the qualifications and rights of members shall be as

---

4. *Id.* at 240–41.

5. *E.g., Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758; *National Treasury,* 25 F.3d at 241.

6. *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976) (citations omitted).

7. District of Columbia Nonprofit Corporation Act, D.C.CODE ANN. § 29–501 et seq. (1981 & Supp.1995).

8. *Id.* § 29–512.

established from time to time by the board of directors." [9]

In order to establish membership criteria as required by FOE's bylaws, FOE's board of directors must "act" in the manner prescribed by its bylaws. [10] The bylaws provide that "[t]he act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors, unless the act of a greater number is required by law or by these bylaws." [11] Alternatively, FOE's board of directors is authorized to provide itself with the option of establishing membership criteria on an informal basis. Under the FOE bylaws, "any action which may be taken at a meeting of directors, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the directors." [12]

Finally, FOE's bylaws also create the position of the corporate secretary and define the parameters of that person's duties and responsibilities. With regard to this case, the relevant portion of the bylaws directs that "[t]he secretary shall keep the minutes of the meetings of the members and of the board of directors in one or more books provided for that purpose...." [13] The secretary is also the custodian of corporate records for FOE. [14]

### APPLICATION

#### A. Analytical Overview

■ Based on a review of the record before the court, the court finds that FOE has failed to establish that it possesses representational standing to prosecute this action on behalf of the aggrieved individuals who claim membership in FOE. The court further finds that FOE has failed to demonstrate compliance with its internal bylaws regarding the creation of a class of members within the

corporation. As a result, FOE cannot establish that anyone, let alone the individuals for whom it is prosecuting this suit, is a member of FOE. Plaintiff FOE has failed to demonstrate the facts necessary to entitle it to prosecute this action in reliance on the doctrine of representational standing. As such, because FOE cannot rely on representational standing, and introduced no evidence that it possesses constitutional standing in its own right, this court lacks subject matter jurisdiction over this action due to the absence of a justiciable case or controversy. Accordingly, this case must be dismissed without reaching the merits of whether Chevron exceeded its NPDES permit parameters for the discharge of total suspended solids.

#### B. The Blackwelder Testimony

In support of FOE's reliance on representational standing, the president of FOE, Brent Blackwelder, testified, in relevant part, as follows: [15]

It is my understanding that the policy of the Board of Directors of the Friends of the Earth is to allow the president and the staff to determine qualifications for membership. It is my understanding that this has been the policy of the board, at least as of 1990.

It is my understanding that I (and my predecessors), at least since 1990, determined that membership was open to any person who made any contribution, no matter the amount, to the Friends of the Earth, and who otherwise supported our organization. Membership continues until that person resigns, dies, or is removed by action of Friends of the Earth. It is also my understanding that a person could become a member by having a donation made in the name of that person.

---

9. FOE Bylaws, art. III ("Members") § 1 ("Classes of Membership").

10. D.C.Code Ann. § 29–502(6) (" 'Member' means one having membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws.").

11. Id. art. V ("Board of Directors") § 8 ("Manner of Acting").

12. Id. art. V ("Board of Directors") § 11 ("Informal Action by Directors").

13. Id. art. VI ("Officers") § 10 ("Secretary").

14. Id.

15. The parties submitted a stipulation at trial concerning the testimony of the president of FOE, Mr. Brent Blackwelder.

This understanding is not based on any formal vote of the Board of Directors, and I know of no document that indicates that the Board of Directors has granted to the president or the staff this authority. I know of no document that sets out the qualifications for membership, and I know of no document that specifically provides for gift memberships. Finally, I am aware of no votes taken by the Board of Directors on any of these matters.[16]

## C. The Problem

FOE's bylaws clearly state that "[t]he designation of members and the qualifications and rights of members shall be as established from time to time by the board of directors."[17] Further, the bylaws provide that "[t]he act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors...."[18] Surprisingly, FOE has failed to establish that its board of directors ever took the requisite action to create a class of members to "populate" the FOE corporation. In spite of the fact that the corporate secretary is required, by the bylaws, to keep and maintain minutes of board meetings, FOE has not come forward with any evidence other than the Blackwelder testimony to demonstrate that the board ever acted to define and create a class of members for FOE.

The Blackwelder testimony highlights FOE's problem. Blackwelder, like FOE, is unable to point to any action of the board of directors defining membership in FOE. In the absence of formal action on the part of the board, Blackwelder simply assumes that membership requirements are to be determined by the president and FOE staff. Unfortunately for FOE, this is not the case.

## D. Live by the Corporation, Die by the Corporation

FOE chose to pursue its agenda of environmental protection as a corporation existing under the laws of the District of Columbia. FOE enjoys a number of benefits that inure to those who opt to incorporate, including the limited liability that typically flows from the protection of any corporate entity. Additionally, FOE derives specific benefits from incorporation under the District of Columbia Nonprofit Corporation Act. By virtue of its incorporation under the D.C. statute, employees of FOE possess a statutory limit on personal civil liability arising from "acts or omissions in providing services or performing duties on behalf of the corporation...."[19] Along the same lines, volunteers working for FOE are immune from civil liability for their good faith mistakes made in the course of their service to the corporation.[20]

Because it is organized as a corporation, and therefore exists as a separate legal entity, FOE is required to observe certain legal formalities in its operation. In terms of delineating the criteria for its membership, FOE has failed to show that it has observed these formalities.[21] Instead of demonstrating the requisite actions of the board of directors, FOE attempts to rely on the *de facto* policy regarding membership eligibility espoused by Mr. Blackwelder. This informal policy will not suffice to create a class of members in a corporation such as FOE. If FOE were an unincorporated association, such an informal membership policy would be appropriate.

As the Fifth Circuit recently noted in a case involving unincorporated associations under Texas and Pennsylvania law, because "such entities typically are loosely organized, written formalities are not required for membership; a person joins an association

---

**16.** Tr. Stipulation of Blackwelder Test. at 1–2.

**17.** FOE Bylaws, art. III ("Members") § 1 ("Classes of Membership").

**18.** *Id.* art. V ("Board of Directors") § 8 ("Manner of Acting").

**19.** D.C. Code Ann. § 29–599.16(b).

**20.** *Id.* § 29–599.15(b).

**21.** Mr. Blackwelder's testimony reveals that even the president of FOE is unaware of any action by the board of directors that would function to define a class of members as required by the FOE bylaws.

when—either expressly or tacitly—he is accepted as, and agrees to become, a member. The intent of both parties, the putative member and the association, is what governs."[22] The clear implication of this statement is that while membership in unincorporated associations does not require formalities, membership in incorporated entities *does* require adherence to such formalities. FOE elected to exist as a corporation and enjoyed the benefits that such an existence afforded it. FOE is, however, unable to show that its board of directors discharged its duties under the FOE bylaws by defining membership criteria for individuals interested in joining FOE. As a result, FOE is unable to demonstrate its eligibility under *Hunt* to pursue this action for various individuals using the doctrine of representational standing.

## CONCLUSION

Membership is the avenue by which an organization becomes empowered to litigate the claims of individuals. Without the membership of the proper aggrieved individuals, FOE is, in a constitutional sense, a stranger to this controversy. The court therefore finds that because FOE cannot demonstrate that the individuals aggrieved by Chevron's actions are indeed members of FOE, Plaintiff has failed to satisfy the prerequisites to pursue this action in a representational capacity according to *Hunt v. Washington State Apple Advertising Commission*.[23] Further, the court finds that FOE introduced no evidence that it possesses constitutional standing in its own right. Accordingly, in the absence of a justiciable case or controversy, this matter must be, and is, DISMISSED for lack of subject matter jurisdiction under Article III of the United States Constitution.

---

**22.** *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1289–90 (5th Cir.1994) (footnotes omitted) (citing *Reading Co. v. City of Philadelphia*, No. 91–CV–2377, 1992 WL 392595, at *6 (E.D.Pa. Dec. 17, 1992); *Selected Risks Ins. Co. v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989); *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992); HOWARD L. OLICK & MARTHA E. STEWART,

NONPROFIT CORPORATIONS, ORGANIZATIONS, AND ASSOCIATIONS § 11, at 33 (6th ed. 1994); 7 C.J.S. *Associations* § 19, at 54).

**23.** 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).